**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| ELLYSE WISSEL; MICHELLE ANDERSON; AND MCLAIN MOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RURAL MEDIA GROUP, INC.,<br><br>Defendant. | Case No. 4:24-CV-999<br><br>Hon. Mark Pittman |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

**Claim of Unconstitutionality**

# TABLE OF CONTENTS


**Page**

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 3

I. The VPPA Violates The First Amendment. ..... 3

A. The VPPA Imposes Suspect Burdens. ..... 3

B. The VPPA Fails First Amendment Scrutiny. ..... 4

II. Alternatively, The Complaint Fails To Sufficiently Allege A VPPA Claim. ..... 8

A. Plaintiffs Fail to Allege Actual Damages. ..... 8

B. Plaintiffs Fail To Allege Defendant Knowingly Disclosed Plaintiffs' PII. ..... 11

1. Plaintiffs Do Not Allege That Their Video Watching Behavior Was Disclosed Together With Any Information Linked Directly To Them. ..... 11

2. Plaintiffs Fail To Allege Defendant Knowingly Disclosed Their Information. ..... 15

CONCLUSION ..... 17

REQUEST FOR HEARING ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14

*Ballinger v. City of Oakland*,
398 F. Supp. 3d 560 (N.D. Cal. 2019), aff'd, 24 F.4th 1287 (9th Cir. 2022)....................11

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980)....................10

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)....................9

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994)....................12, 13

*Dacostagomez-Aguilar v. U.S. Att'y Gen.*,
40 F.4th 1312 (11th Cir. 2022)....................16

*Doe v. Chao*,
540 U.S. 614, 124 S. Ct. 1204, 157 L. Ed. 2d 1122 (2004)....................15

*Edwards v. Learfield Commc'ns, LLC*,
697 F. Supp. 3d 1297 (N.D. Fla. 2023)....................17, 21

*Eichenberger v. ESPN, Inc.*,
No. 14–cv–463 (TSZ), 2015 WL 7252985 (W.D. Wash. May 7, 2015)....................19

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015)....................19

*Ellis v. Cartoon Network, Inc.*,
No. 1:14-CV-484-TWT, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014)....................18, 19

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020)....................22

*Fanin v. U.S. Dep't of Veterans Affs.*,
572 F.3d 868 (11th Cir. 2009) ....................15, 16

*FF Cosms. FL, Inc. v. City of Miami Beach*,
866 F.3d 1290 (11th Cir. 2017) ....................11

*Gale Force Roofing & Restoration, LLC v. Brown*,
548 F. Supp. 3d 1143 (N.D. Fla. 2021)....................13

*Ghanaat v. Numerade Labs, Inc.*,
No. 23-CV-00833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) ....................21

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
527 U.S. 173 (1999)....................12

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493-FLA, 2024 WL 3573874 (C.D. Cal. July 19, 2024)....................21

*Heyman v. Cooper*,
31 F.4th 1315 (11th Cir. 2022) ....................15

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ....................18

*Knowles v. City of Waco, Tex.*,
462 F.3d 430 (5th Cir. 2006) ....................11

*Martinez v. D2C, LLC*,
No. 23-21394-CIV, 2024 WL 4367406 (S.D. Fla. Oct. 1, 2024) ....................21

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580, 2022 WL 17869218 (Dec. 22, 2022, N.D. Cal. 2022)....................22

*Mount v. PulsePoint, Inc.*,
No. 13 CIV. 6592 (NRB), 2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ....................22

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016).................... *passim*

*Perry v. Cable News Network, Inc.*,
No. 1:14-CV-02926-ELR, 2016 WL 4373708 (N.D. Ga. Apr. 20, 2016)....................18

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015)....................9, 10

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)....................17, 18, 19

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995) .......... 12, 13

*Solomon v. Flipps Media, Inc.*,
No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) .......... 21

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .......... 9, 10, 11, 12

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023) .......... 13

*U.S. West, Inc. v. FCC*,
182 F.3d 1224 (10th Cir. 1999) .......... 9, 11, 12

*United States v. Dawson*,
64 F.4th 1227 (11th Cir. 2023) .......... 16

*United States v. Sparks*,
806 F.3d 1323 (11th Cir. 2015) .......... 11

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 13

*Wollschlaeger v. Governor, Fla.*,
848 F.3d 1293 (11th Cir. 2017) .......... 9, 10, 11

*Wooten v. La Salle Corr.*,
No. 7:22-CV-000148 (WLS), 2024 WL 4132331 (M.D. Ga. Sept. 10, 2024) .......... 11, 12

**Statutes**

5 U.S.C. § 552a(g)(4) .......... 15

18 U.S.C. § 2710(a)(3) .......... 13, 17

18 U.S.C. § 2710(a)(4) .......... 13

18 U.S.C. § 2710(b)(1) .......... 10, 17, 18, 23

18 U.S.C. § 2710(b)(1) .......... 17

18 U.S.C. § 2710(c) .......... 14

18 U.S.C. § 2710(c) .......... 15

18 U.S.C. § 2710, *et seq.* .......... 7

**Rules**

Fed. R. Civ. P. § 12(b)(6) ........ 7, 14

**Other Authorities**

1988 U.S.C.C.A.N. 4342-4 ........ 11

*Black's Law Dictionary* ........ 16

*Damages*, *Black's Law Dictionary* (5th ed. 1979) ........ 16

https://www.merriam-webster.com/dictionary/cookie ........ 22

S. Rep. No. 100-599 (1988) ........ 11, 12

Defendant Rural Media Group, Inc. ("RMG" or "Defendant") by and through its undersigned counsel, hereby respectfully moves this Court to dismiss the Class Action Complaint ("Complaint") filed by Plaintiffs Ellyse Wissel, Michelle Anderson, and McClain Mott (collectively, "Plaintiffs") with prejudice. In support thereof, Defendant states as follows:

## INTRODUCTION

RMG is the world's leading provider of multimedia content dedicated to the rural and western lifestyle. RMG is the parent company of several entities which offer rural and western media programming, and until late November 2024, RMG's portfolio included The Cowboy Channel.[1] The Cowboy Channel is a television network which also operates a website, cowboychannelplus.com (the Website). The Website provides a streaming video service that offers media programming for purchase. Plaintiffs allege that they each purchased prerecorded video material from the Website. Although RMG is the parent company of The Cowboy Channel, LLC which owned The Cowboy Channel at the time the Complaint was filed, Plaintiffs alleged that it was RMG who operated the Website and that RMG shared their information with various third parties through the use of third party analytics tools, allegedly in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq.*[2] The VPPA, however, cannot withstand First Amendment scrutiny, and even if it could, Plaintiffs have not sufficiently alleged that Defendant's conduct violated the VPPA. Thus, the Complaint should be dismissed with prejudice.

---

[1] In late November 2024, RMG's subsidiary The Cowboy Channel, LLC sold The Cowboy Channel to an unaffiliated third party.

[2] These allegations are false. RMG never owned or operated the Website. However, RMG understands that the Complaint's allegations are taken as true for purposes of a Rule 12(b)(6) motion.

## BACKGROUND

Plaintiffs' relevant allegations amount to 1) they purchased a subscription to the Website (Compl. at ¶¶ 10, 19, 28); 2) they watched prerecorded video materials on the Website, and therefore requested and obtained prerecorded video material sold by RMG (*id*); 3) they have Meta accounts, Meta Profiles, and a Facebook ID ("FID") associated with such profile (*id.* at ¶¶ 11, 20, 29); 4) they watched prerecorded videos on the Website while logged into Facebook (*id.* at ¶¶ 12, 21, 30); and 5) without consent, RMG disclosed to Meta Plaintiff's FID, the fact that she purchased a subscription to the website, the identity of the prerecorded material viewed through her subscription, and the specific URL identifying where the prerecorded material is available for viewing (*id.* at ¶¶ 14-15, 23-24, 32-33). The Complaint generally alleges that Defendant's disclosure of customer information occurs through the use of pixels on the Website (*id.* at ¶¶ 75, 109, 115) and also includes hypothetical allegations that RMG discloses individuals hashed e-mail addresses and viewing information to both Google and Yahoo, as well as Google IDs to Google (*id.* at ¶¶ 110, 116). But Plaintiffs do not allege they have Google IDs or that their hashed email addresses were disclosed to any third party.

Based on these allegations, the Complaint brings a single cause of action for violation of the VPPA. Specifically, Plaintiffs allege that Defendant violated the VPPA by disclosing Plaintiffs' identities and information that reveals specific videos that Plaintiffs watched. (*Id.* at ¶ 131.) Plaintiffs claim this conduct violates the VPPA because Defendant allegedly did not receive Plaintiffs' consent allowing the disclosure of Plaintiffs' information to third parties. (*Id.* at ¶ 134.) Plaintiffs seek to assert their claims on behalf of a putative national class. (*Id.* at ¶ 120.)

## ARGUMENT

Plaintiffs' claim for violation of the VPPA fails both because the VPPA places an unconstitutional burden on free speech and because the Complaint does not sufficiently state a claim upon which relief can be granted.

### I. The VPPA Violates The First Amendment.

The Complaint should be dismissed because it seeks to enforce a statute that violates the First Amendment. The First Amendment states, "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. Laws like the VPPA that "burden" speech are unconstitutional unless they satisfy First Amendment scrutiny. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011); *U.S. West, Inc. v. FCC*, 182 F.3d 1224, 1224 (10th Cir. 1999) (holding that an FCC regulation violated the First Amendment where it restricted telecommunication carriers from using customer information "that is made available to the carrier by the customer solely by virtue of the carrier-customer relationship" because it made speech more difficult by limiting the ability of carriers to target their speech to a particular audience). The VPPA imposes severe speech restrictions that cannot be justified.

#### A. The VPPA Imposes Suspect Burdens.

To begin, the VPPA triggers First Amendment scrutiny because it places speaker- and content-based restrictions on the dissemination of information. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015); *Sorrell*, 564 U.S. at 567, 131 S.Ct. 2653; *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1307-08 (11th Cir. 2017). The First Amendment "[p]rohibit[s] restrictions [that] distinguish[] among different speakers." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010); *see also Reed*, 576 U.S. at 170. Further, content-based restrictions "are presumptively unconstitutional. . ." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

A burden is speaker-based if it applies only to some classes of speakers and content-based if its application turns on the message of regulated speech. *Sorrell,* 564 U.S. at 567, 131 S.Ct.; *see also Wollschlaeger* 848 F.3d 1293, 1307 (finding speaker-based and content-based restriction where provisions applied "only to doctors and medical professionals" and applied "only on the topic of firearm ownership").

Here, the VPPA applies only to a "video tape service provider" and prohibits only the disclosure of "personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). Its dictates are speaker-based because they "target[s] those speakers" within their gateway definitions and no others, *Sorrell*, 564 U.S. at 565, and content-based because its applicability "depend[s] entirely on the communicative content of the" disclosures. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 164 (2015). The Supreme Court in *Sorrell* held that a Vermont law restricting "the sale, disclosure, and use of prescriber-identifying information," which pharmacies receive when processing prescriptions, was both content- and speaker-based and triggered "heightened scrutiny." 564 U.S. at 571. The VPPA likewise forbids specified speakers from disclosing information that can be identified only by its content. First Amendment scrutiny applies.

**B. The VPPA Fails First Amendment Scrutiny.**

First Amendment scrutiny is not satisfied. As an initial matter, strict scrutiny is the applicable standard. *See Reed*, 576 U.S. at 163, 171. The VPPA must therefore be "narrowly tailored to serve compelling state interests." *Id*. Although *Sorrell* declined to decide whether strict scrutiny or the intermediate standard under *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980), applies to content- and speaker-based commercial speech, 564 U.S. at 571, the Court more recently applied strict scrutiny to a ban on robocalls, reasoning that, under its "precedents, a 'law that is content based' is 'subject to strict scrutiny.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 621 (2020) (quoting *Reed*, 576 U.S. at 165).

But the VPPA cannot even satisfy intermediate scrutiny, as the law is not "narrowly tailored to serve a significant governmental interest." *Knowles v. City of Waco, Tex.*, 462 F.3d 430, 433-34 (5th Cir. 2006) (quotation omitted). And a court "need not decide whether strict scrutiny applies," if a law does not survive constitutional scrutiny under either standard. *See Wollschlaeger*, 848 F.3d at 1308. That is the case here.

For example, under an intermediate scrutiny "commercial speech inquiry" it must be shown "at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell*, 564 U.S. at 572. This test is often expressed in four inquiries: (1) whether the speech at issue concerns "lawful activity" and is not "misleading," (2) whether the government interest in burdening speech is "substantial," (3) whether "the regulation directly advances the asserted government interest," and (4) whether the regulation is "more extensive than is necessary to serve that interest." *FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017). The VPPA fails each inquiry.

First, it does not prevent misleading speech or address illegal businesses.

Second, no substantial interest supports the severe speech prohibitions. "[T]he government cannot satisfy the second prong of the *Central Hudson* test by merely asserting a broad interest in privacy," but must also "specify the particular notion of privacy and interest served" and demonstrate "that the state has considered the proper balancing of the benefits and harms of privacy." *U.S. West*, 182 F.3d at 1234-35. Congress's record for the VPPA specified that the statute protects the notion of privacy defined by the First and Fourth Amendments. S. Rep. No. 100-599, at 4-5 (1988), *as re-printed in* 1988 U.S.C.C.A.N. 4342-4. But both Amendments constrain only state action. *See United States v. Sparks*, 806 F.3d 1323, 1334 (11th Cir. 2015); *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 574 (N.D. Cal. 2019), aff'd, 24 F.4th 1287 (9th Cir. 2022); *Wooten v. La Salle Corr.*, No. 7:22-CV-000148 (WLS), 2024 WL 4132331, *6 (M.D. Ga. Sept. 10,

2024). So the VPPA, which burdens private businesses, does not "extend" their rights, S. Rep. No. 100-599 at 2. And the choice to prohibit private speech in the name of "intellectual freedom," *id.* at 4, makes little sense.

The legislative history also cites an incident "when a weekly newspaper in Washington published a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store" and one other incident where "the attorney for a women in a child custody proceeding made an informal request for the records of every film rented by her husband in an effort to show that, based on his viewing habits, he was an unfit father." *Id.* at 5-6. But simply reciting two incidents—out of innumerable video rentals nationwide—does not "show that the dissemination of the information desired to be kept private would inflict specific and significant harm on individuals." *U.S. West*, 182 F.3d at 1235. In neither incident did any harm arise. Judge Bork's Supreme Court nomination failed because of his judicial philosophy, not his video rentals, and there is no evidence that the attorney in the custody proceeding obtained the film records.[3] Simply put, the legislative history cites not one incident of harm arising from disclosure of video rentals. *See Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (explaining that the burden "is not satisfied by mere speculation or conjecture") (quotation marks omitted).

Third, even if a privacy interest were sufficient, the VPPA does not "directly advance[]" it. *Sorrell*, 564 U.S. at 572. "There must be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" *Id.* The VPPA is unconstitutionally underinclusive. *See Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 190 (1999). "While surprising at first glance, the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994)

[3] Given substantial amounts of private information are exchanged daily in litigation discovery, it is hard to see what a litigation incident could say about an important privacy interest.

(footnote omitted). Underinclusive laws present "risks of viewpoint and content discrimination," and "[t]hey may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* at 52.

The VPPA protects privacy in the most selective and irrational of ways. It protects only "video" purchases, rentals, or deliveries, 18 U.S.C. § 2710(a)(3), but not books, magazines, music, and pictures. "The failure to prohibit the disclosure of" purchases of such materials "makes no rational sense if the Government's true aim is to" protect intellectual privacy or guard against embarrassment from public disclosure of information people consume at home. *Rubin*, 514 U.S. at 488. Under the statute, renting *Lassie* activates fulsome statutory penalties if that rental is disclosed, but books, magazines, and photographs with sexual content (or any content) receive no protection. Likewise, because the statutes protect only "prerecorded" materials, 18 U.S.C. § 2710(a)(4), someone who watches livestreamed video content (no matter how embarrassing) receives none of the rights provided to those who watch prerecorded content (no matter how innocuous). The *same* video content will be unprotected on a first, live showing but may be protected on later showings. The VPPA is also selective in its application to some businesses, but not others. The statute applies to a video obtained from a business having "a focus" of video rental (e.g., Netflix) but not to the *same video* from a business without that focus (e.g., Target). *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221-22 (C.D. Cal. 2017). And it selectively reaches renters, purchasers, and subscribers, but no one else. *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). This burdens some speakers, but not others, for no reason whatsoever.

Finally, Congress could have passed a privacy law that protects privacy in a rational manner without this selectivity, *see Gale Force Roofing & Restoration, LLC v. Brown*, 548 F. Supp. 3d

1143, 1160 (N.D. Fla. 2021), such as by applying directives to all content for which an intellectual-privacy interest might reasonably attach, and all suppliers of that content. Instead, Congress picked out the case of a single judicial nominee, drew up a law to prevent *that* case from reoccurring, and protected practically nothing else. This is so irrational that the VPPA will not even do that: if all internet images a future judicial nominee ever viewed are made public, the statutes invoked here will say nothing about that—even though that would be no different from the Bork incident that inspired the VPPA. That is no way to protect privacy, and it does not justify severe speech burdens.

## II. Alternatively, The Complaint Fails To Sufficiently Allege A VPPA Claim.

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. The Complaint fails to state a claim for two reasons: (1) Plaintiffs do not allege they suffered any actual damages; and (2) Plaintiffs do not sufficiently allege Defendant knowingly disclosed Plaintiffs' personally identifiable information as required to state a claim under the VPPA.

### A. Plaintiffs Fail to Allege Actual Damages.

Under the VPPA, a court may award "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. 2710(c). The plain language of the VPPA indicates that Congress only intended to compensate for actual injury, and thus, when, as here, the Plaintiffs do not allege any actual damages, their Complaint should be dismissed for failure to state a claim upon which relief can be granted.

The remedial provision of the VPPA provides:

> (c) Civil action.--(1) Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court.
>
> (2) The court may award—
>
> (A) actual damages but not less than liquidated damages in an amount of $2,500;
>
> (B) punitive damages;
>
> (C) reasonable attorneys' fees and other litigation costs reasonably incurred; and
>
> (D) such other preliminary and equitable relief as the court determines to be appropriate.

18 U.S.C. § 2710(c). When read in context, it is apparent that the language "but not less than liquidated damages in an amount of $2,500" is intended to limit the phrase actual damages. *See Heyman v. Cooper*, 31 F.4th 1315, 1319 (11th Cir. 2022) ("According to the rule of the last antecedent, a 'limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.'"). Indeed, similar language found in the Privacy Act of 1974 has been held to require proof of actual damages. *Doe v. Chao*, 540 U.S. 614, 620, 124 S. Ct. 1204, 1208, 157 L. Ed. 2d 1122 (2004) (finding "person entitled to recovery," and thus entitled to minimum statutory award of $1,000 for intentional or willful violation of Privacy Act, is person who has sustained actual damages as result of violation);.*Fanin v. U.S. Dep't of Veterans Affs.*, 572 F.3d 868, 872 (11th Cir. 2009) ("Obtaining monetary damages under § 552a(g)(4) requires proof of 'actual damages.'"); *see also* 5 U.S.C. § 552a(g)(4) ("[T]he United States shall be liable to the individual in an amount equal to the sum of—(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; . . . ."). To read the VPPA as permitting an award of $2,500 in the absence of actual damages requires substituting the conjunction "or" in the place of the phrase "but not less

than." *See Dacostagomez-Aguilar v. U.S. Att'y Gen.*, 40 F.4th 1312, 1316 (11th Cir. 2022) ("The use of the disjunctive 'or' indicates alternatives and requires that those alternatives be treated separately.") (internal quotation marks omitted). Such an interpretation is at odds with the plain language.

Here, Plaintiffs have not alleged any actual damages that can open the door to the VPPA's statutory minimum damages. The phrase "actual damages" is not defined in the VPPA. But the other circuits have interpreted "actual damages" as permitting "recovery only for proven pecuniary losses and not for generalized mental injuries, loss of reputation, embarrassment or other non-quantifiable injuries." *Fanin*, 572 F.3d at 872-73. The *Black's Law Dictionary* definition from the time the VPPA was enacted further supports this conclusion. *See United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023) (explaining that courts "look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted," which can be determined "by looking at dictionaries in existence around the time of enactment"). The applicable edition of *Black's Law Dictionary* defines "actual damages" as follows: "Real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages. Synonymous with 'compensatory damages' and with 'general damages.'" *Damages*, *Black's Law Dictionary* (5th ed. 1979). The Complaint alleges nothing more than mere disclosure of Plaintiffs' information, which is a non-quantifiable injury, and thus, does not satisfy the "actual damages" requirement. (*see* Compl. ¶¶ 16, 25, 34 135.) *See Fanin*, 572 F.3d at 870, 875 (holding that plaintiffs who names, social security numbers, birth dates, and healthcare files were contained on a stolen hard drive could not recover statutory damages under the Privacy Act

of 1974 because they failed to show any pecuniary loss). Thus, Plaintiffs are not entitled to the statutory minimum damages, and their Complaint fails to state a claim.

**B. Plaintiffs Fail To Allege Defendant Knowingly Disclosed Plaintiffs' PII.**

To state a claim under the VPPA, plaintiffs must allege that defendant (1) is a video tape service provider ("VTSP"); (2) who knowingly disclosed to any person; (3) personally identifiable information ("PII"); (4) concerning any consumer. *See* 18 U.S.C. 2710(b)(1). Here, Plaintiffs fail to allege that Defendant knowingly disclosed Plaintiffs' PII.

Unless a VTSP has provided notice and obtained consent, it is prohibited from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015); 18 U.S.C. § 2710(b)(1). PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular person*—not just an anonymous individual—and connect this particular person with his or his viewing history." *Robinson*, 152 F. Supp. 3d at 179. The Complaint fails to allege the disclosure of Plaintiffs' information sufficient to satisfy the VPPA's definition and fails to allege that Defendant acted knowingly. Thus, the Complaint should be dismissed for failure to sufficiently allege a claim for violation of the VPPA.

**1. Plaintiffs Do Not Allege That Their Video Watching Behavior Was Disclosed Together With Any Information Linked Directly To Them.**

The most basic requirement of a VPPA claim is disclosure of "the kind of information that would ***readily permit an ordinary person*** to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added) ("*Nickelodeon*"); *see also Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297

(N.D. Fla. 2023) (dismissing VPPA claim because, among other reasons, the complaint did not plausibly allege how the information allegedly transmitted by the pixel would "'readily permit[] *an ordinary person* to identify' Plaintiffs' video-watching behavior . . . or how Facebook can do that without 'unforeseeable detective work.'"). PII "is that which, in its own right, without more, 'link[s] an actual person to actual video materials.'" *Ellis v. Cartoon Network, Inc.*, No. 1:14-CV-484-TWT, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014); *see also Perry v. Cable News Network, Inc.*, No. 1:14-CV-02926-ELR, 2016 WL 4373708, at *4 (N.D. Ga. Apr. 20, 2016) (dismissing VPPA claim alleging Defendant disclosed plaintiff's "MAC address along with the viewing history tied to that address" because, among other reasons, the complaint did not "pled any facts to establish that the video history and MAC address were tied to an actual person and disclosed by Defendant").[4]

Plaintiffs' entire theory is that website code caused Plaintiffs' own browsers to share Plaintiffs' FIDs and the URL where the video materials are available with Meta. (Compl. ¶¶ 16, 25, 34.) Plaintiffs allege that the FID is "a unique sequence of numbers linked to a specific Meta profile" and that a person can plug the numbers into Facebook's website to pull up "the profile of the person to whom the FID corresponds." (Compl. ¶¶ 78-79.) Plaintiffs' theory appears to be that if the profile contains information that actually identifies a specific person, the FID which was used to pull up the profile should constitute PII. So, by Plaintiffs' own allegations, the information

[4] *See also Nickelodeon*, 827 F.3d at 285 ("We also hold that the Act's prohibition on the disclosure of personally identifiable information applies only to the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."); *Robinson,* 152 F. Supp. 3d at 182 ("the most natural reading of PII suggests that it is the information actually 'disclos[ed]' by a 'video tape service provider,' 18 U.S.C. § 2710(b)(1), ***which must itself do the identifying*** that is relevant for purposes of the VPPA (literally, 'information which identifies')—***not information disclosed by a provider, plus other pieces of information*** collected elsewhere by non-defendant third parties.") (emphasis added); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014) ("The plain language of the statute suggests, and the Senate Report confirms, that the statute protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched.").

allegedly transmitted requires "more" to link "an actual person to actual video materials." *See Ellis*, 2014 WL 5023535, at *3. (Compl. ¶ 79.) This is also true with regard to Plaintiffs' hypothetical allegations that unspecified Website users hashed emails and Google IDs were transmitted to Google and Yahoo. FIDs (and Google IDs and hashed email addresses) are merely static digital identifiers, which are not PII.[5] (*See* Compl. ¶ 77, 112, 118.) Static digital identifiers include such things as a unique device identifier that is "randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device." *Nickelodeon*, 827 F.3d at 282 n.124 (citing *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015)). These random strings of numbers, when viewed by an ordinary person, do not identify who that person is. Rather, static digital identifiers "fall[] even further down the spectrum [of identifiable information]" because "[t]o an average person, an IP address or ***a digital code in a <u>cookie file</u> would likely be of little help in trying to identify an actual person.***" *Nickelodeon*, 827 F.3d at 283 (emphasis added). Although some courts have since held the FID is PII because it can be plugged into a Facebook URL and PII *may* be found on the resulting Facebook profile, this multi-step investigative process does not make the FID, shared through the "c_user" cookie, PII, as explained by the *Nickelodeon* court and multiple district courts in this circuit.

In *Nickelodeon*, the type of information at issue was plaintiff's IP address, a user's browser and operating system settings, and a computing device's unique device identifier. *Id*. at 281-82. The court held "the expansion of privacy laws since the Video Privacy Protection Act's passage

---

[5] The *Nickelodeon* court noted "[m]ost [courts] have followed the rule adopted in *In re Hulu Privacy Litigation*" and "concluded that static digital identifiers that could, in theory, be combined with other information to identify a person do not count as 'personally identifiable information' under the Act, at least by themselves." 827 F.3d at 283 (collecting cases, including *Robinson*, 152 F. Supp. 3d at 182-84 (a hashed serial number was not PII when the defendant did not disclose a "correlated look-up table" that would enable the recipient to link the hashed information to the plaintiff's identity); *Eichenberger v. ESPN, Inc.*, No. 14–cv–463 (TSZ), 2015 WL 7252985, at *4-5 (W.D. Wash. May 7, 2015); *Ellis*, 2014 WL 5023535, at *3).

demonstrates that, whatever else 'personally identifiable information' meant in 1988, it did not encompass" such static digital identifiers. *Id*. at 286.[6] And unlike other statutes which "gave the FTC authority to expand the types of information that count as personally identifying under that law," "***[t]he Video Privacy Protection Act . . . does not empower an administrative agency to augment the definition of 'personally identifiable information' in light of changing circumstances or new technologies***. The meaning of that phrase in the Act is, it would appear, ***more static.***" *Id*. (emphasis added.) Further, and more importantly, *Nickelodeon* explained Congress's subsequent 2013 amendment of the VPPA demonstrates Congress "was keenly aware of how technological changes have affected the original Act" and "***[d]espite this recognition***, ***Congress did not update the definition of personally identifiable information in the statute.***" *Id*. (emphasis added). "What's more, it chose not to do so despite . . . submitted written testimony that" specifically argued for "the addition of Internet Protocol (IP) Addresses and ***account identifiers*** to the definition of [personally identifiable information]." *Id*. at 288 (emphasis added).

This Court should follow the detailed reasoning set forth by *Nickelodeon*, and adopted by *Edwards*, to hold the FIDs Plaintiffs allege were disclosed are ***not*** PII because they are merely static digital identifiers automatically sent through a cookie file to a single company, which is nothing like the purposeful and public disclosures of actual names with video viewing history to

[6] The court compared the VPPA to the Children's Online Privacy Protection Act ("COPPA"), which was amended once by FTC rules in 2000 to define personal information to include "a persistent identifier, such as a customer number held in a cookie or a processor serial number, where such identifier is associated with individually identifiable information" and a second time in 2013 to expand the definition to include "'*any persistent identifier that can be used to recognize a user over time and across different Web sites or online services*,' including but not limited to '*a customer number held in a cookie*, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier.'" *Id*. at 287 (emphasis added).

the public at large[7]. *See id.* at 286; *Edwards*, 2023 WL 8544765, at *8.[8] Indeed, "[t]he classic example will always be a video clerk leaking an individual customer's video rental history," and "every step away from that 1988 paradigm will make it harder for a plaintiff to make out a successful claim." *Nickelodeon*, 827 F.3d at 286.

**2. Plaintiffs Fail To Allege Defendant Knowingly Disclosed Their Information.**

Beyond Plaintiffs' failure to allege Defendant disclosed PII at all, they also do not allege Defendant knowingly disclosed their PII.

Plaintiffs do not allege Defendant had any way to know whether they, or any other user, had a FID[9], much less what those FIDs were, or whether Plaintiffs set their browser to allow Facebook cookies. Moreover, "even being simultaneously logged in to Facebook is still not enough to necessarily prompt a Pixel transmission: a subscriber must also have accessed the prerecorded video on [Defendant'] website through the *same web browser and device* through which the subscriber (and not another user) was logged into Facebook." *Martinez v. D2C, LLC*, No. 23-21394-CIV, 2024 WL 4367406, at *7 (S.D. Fla. Oct. 1, 2024) (emphasis added). Even more

---

[7] To the extent the Court credits Plaintiffs' hypothetical allegations regarding Google and Yahoo, the Court should also hold that the Google IDs and hashed email addresses are not PII on this same basis.

[8] Plaintiffs do not allege that their own public Facebook profiles actually contain PII. *See Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) ("Here, Plaintiffs fail to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."); *see also Ghanaat v. Numerade Labs, Inc.*, No. 23-CV-00833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023) ("plaintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *accord Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023).

[9] Plaintiffs similarly do not allege that they had Google IDs or that Defendant knew that they had Google IDs.

importantly, the Complaint alleges that Plaintiffs' own browsers disclose the information (*see* Compl. ¶ 69), not Defendant, which is how cookies generally work.[10]

For example, *In re Facebook, Inc. Internet Tracking Litig.* explains that "[w]hen a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser. These cookies store the user's login ID [FID], and they capture, collect, and compile the referer headers from the web pages visited by the user" and "continued to capture information after a user logged out of Facebook and visited other websites." 956 F.3d 589, 596 (9th Cir. 2020); *see also In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580, 2022 WL 17869218 at *4 (Dec. 22, 2022, N.D. Cal. 2022) ("Cookies are 'small pieces of text used to store information on web browsers.'"); *Mount v. PulsePoint, Inc.*, No. 13 CIV. 6592 (NRB), 2016 WL 5080131, at *1-2 (S.D.N.Y. Aug. 17, 2016) ("Persistent cookies, commonly called 'tracking cookies,' are designed to remain after the user moves on to a different website or even after the browser is closed. Persistent cookies are set by third parties, including advertising companies that have placed ads on the first-party website."). The dictionary defines "cookie" as "a small file or part of a file ***stored on a World Wide Web user's computer***, created and subsequently read by a website server, and containing personal information (such as a user identification code, customized preferences, or a record of pages visited)." *See* "Cookie" (df. 3) https://www.merriam-webster.com/dictionary/cookie (emphasis added).

Plaintiff's own allegations, the dictionary definition of "cookie," and case law on third-party Facebook cookies make clear that any cookies are stored ***on Plaintiff's computer***—not by Defendant—and subsequently transmitted to any third party, such as Facebook and Meta ***by***

[10] The Complaint includes hypothetical allegations that hashed email addresses were disclosed to Google and Yahoo, but Plaintiffs do not allege that their emails were disclosed, that Google or Yahoo somehow actually deciphered the hashed email addresses, or that even if they were able to do so, that Defendant knew they could do so.

***Plaintiff's own browser***. Therefore, even if this Court were to find that FIDs are PII (which they are not), Defendant is not the one that transmits the FID to Meta. The VPPA only applies to an entity that "discloses" PII, 18 U.S.C. § 2710(b)(1), and Defendant cannot possibly "disclose" something it never possesses in the first place. Therefore, the Complaint does not and cannot plausibly assert that Defendant *knowingly disclosed* Plaintiffs' FIDs, let alone their PII, to Facebook.

## CONCLUSION

For the foregoing reasons, Defendant RMG respectfully request that this Court dismiss Plaintiffs' Class Action Complaint with prejudice.

## REQUEST FOR HEARING

Defendant believes that a hearing would assist the Court in evaluating this motion, which raises significant issues about the constitutionality and reach of the VPPA. Defendant respectfully request that the Court schedule a one-hour hearing on this motion.

Dated: January 21, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Ambika B. Singhal*
Ambika B. Singhal
Texas Bar No. 24132954
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201
Tel: 214.210.1200
Fax: 214.210.1201
asinghal@bakerlaw.com

Rachel Palmer Hooper
Texas Bar No. 24039102
811 Main Street, Suite 1100
Houston, Texas 77002
Tel: 713.646.1329
Fax: 713.751.1717
rhooper@bakerlaw.com

*Counsel for Defendant*
*Rural Media Group, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on January 21, 2025, the foregoing document was filed with the Clerk of the Court via the CM/ECF system, which will provide notice of such filing to all parties of record. The undersigned attorney further certifies that on January 21, 2025, the foregoing document was sent via U.S. Certified Mail, Return Receipt Requested, to:

James R. McHenry III
Acting Attorney General for the United States
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530-0001

*/s/ Ambika B. Singhal*
Ambika B. Singhal