**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| ELLYSE WISSEL; MICHELLE ANDERSON; and MCLAIN MOTT, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br>    v.<br><br>RURAL MEDIA GROUP, INC.,<br><br>            Defendant. | Case No. 4:24-cv-999-P<br><br>Hon. Mark T. Pittman |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................................1

II.     LEGAL AND FACTUAL BACKGROUND .....................................................................1

     A.      Video Privacy Protection Act ...............................................................................1

     B.      Factual Background ...............................................................................................3

III.    LEGAL STANDARD .........................................................................................................4

IV.     ARGUMENT ......................................................................................................................4

     A.      The VPPA Does Not Violate the First Amendment ................................................5

          i.      Courts Have Uniformly Rejected First Amendment Challenges to the VPPA ...................................................................................................5

          ii.     Intermediate Scrutiny Applies Because the VPPA Regulates Commercial Speech ...............................................................................8

          iii.    The VPPA Survives Intermediate Scrutiny ...................................................10

     B.      The Complaint States a Claim for Relief Under the VPPA...................................14

          i.      The Complaint Does Not Fail to State a Claim Due to Failure to Allege Actual Damages ...............................................................................14

          ii.     The Complaint Alleges That Defendant Knowingly Disclosed Plaintiffs' Personally Identifiable Information ...............................................19

V.      CONCLUSION...................................................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Pages(s)**

*Adams v. Am.'s Test Kitchen, LP,*
    680 F. Supp. 3d 31, 43 (D. Mass. 2023) ...............................................................................24

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................................................4

*Belozerov v. Gannett Co.,*
    646 F.Supp.3d 310 (D. Mass. 2022) ...............................................................................20, 24

*Boehner v. McDermott,*
    484 F.3d 573 (D.C. Cir. 2007) ...............................................................................................7

*Boelter v. Advance Magazine Publishers Inc.,*
    210 F. Supp. 3d 579 (S.D.N.Y. 2016)...............................................................................7, 13

*Boelter v. Hearst Commc'ns, Inc.,*
    192 F. Supp. 3d 427 (S.D.N.Y. 2016)...........................................................................7, 10, 13

*Boelter v. Hearst Commc'ns, Inc.,*
    269 F. Supp. 3d 172 (S.D.N.Y. 2017)...................................................................................7

*Byrum v. Landreth,*
    566 F.3d 442 (5th Cir. 2009) ...............................................................................................8

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 557 (1980)................................................................................................ *passim*

*Czarnionka v. Epoch Times Ass'n, Inc.,*
    No. 22 CIV. 6348 (AKH), 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022).....................21. 24

*Doe v. Chao,*
    540 U.S. 614 (2004)...........................................................................................................16, 17

*Edwards v. Learfield Commc'ns, LLC,*
    697 F. Supp. 3d 1297 (N.D. Fla. 2023)..............................................................................8, 22

*Eichenberger v. ESPN, Inc.,*
    876 F.3d 979 (9th Cir. 2017) ...............................................................................................23

*Fanin v. U.S. Dep't of Veterans Affs.*,
    572 F.3d 868 (11th Cir. 2009) ...................................................................................17

*Feldman v. Star Trib. Media Co. LLC*,
    659 F. Supp. 3d 1006 (D. Minn. 2023).................................................................23, 24

*Fla. Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995).............................................................................................6, 8

*Frawley v. Nexstar Media Grp. Inc.*,
    No. 3:23-CV-2197-L, 2024 WL 3798073, (N.D. Tex. July 22, 2024)..............................21, 25

*Ghanaat v. Numerade Labs, Inc.*,
    689 F. Supp. 3d 714 (N.D. Cal. 2023) ...............................................................22, 24

*Golden v. NBCUniversal Media*, LLC,
    688 F. Supp. 3d 150 (S.D.N.Y. 2023)...................................................................21

*Harris v. Pub. Broad. Serv.*,
    662 F.Supp.3d 1327 (N.D. Ga. 2023) ....................................................................20

*Heerde v. Learfield Commc'ns, LLC*,
    No. 2:23-CV-04493-FLA (MAAX),
    2024 WL 3573874 (C.D. Cal. Sept. 27, 2024) .........................................................22

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) .......................................................................7, 8

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..............................................................................24

*In re Hulu Privacy Litigation*,
    No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ....................................23

*Kehoe v. Fid. Fed. Bank & Tr.*,
    421 F.3d 1209 (11th Cir. 2005) ...........................................................................17

*Lebakken v. WebMD, LLC*,
    640 F. Supp. 3d 1335 (N.D. Ga. 2022) .................................................................20

*Li v. Georges Media Grp. LLC*,
    No. CV 23-1117, 2023 WL 7280519 (E.D. La. Nov. 3, 2023) .........................................22

*In re Nickelodeon Consumer Privacy Litigation*,
    827 F.3d 262, 284 (3d Cir. 2016)................................................................1, 22, 23

*Peterson v. Learfield Commc'ns, LLC*,
    705 F. Supp. 3d 937 (D. Neb. 2023) ........................................................................................8

*R J Reynolds Tobacco Co. v. Food & Drug Admin.*,
    96 F.4th 863 (5th Cir. 2024) ..............................................................................................8, 9

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015).....................................................................................21

*Saunders v. Hearst Television, Inc.*,
    711 F. Supp. 3d 24 (D. Mass. 2024) ............................................................................ *passim*

*Solomon v. Flipps Media, Inc.*,
    No. 22CV5508JMAJMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023) ............................22

*Spivey v. Robertson*,
    197 F.3d 772 (5th Cir. 1999) .................................................................................................4

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011).......................................................................................................12, 13

*Stark v. Patreon,* Inc.,
    656 F. Supp. 3d 1018 (N.D. Cal. 2023) ...............................................................................6, 7

*Mollett v. Netflix, Inc.*,
    795 F.3d 1062 (9th Cir. 2015) ...........................................................................................4, 15

*United States v. Edge Broad. Co.*,
    509 U.S. 418 (1993)...............................................................................................................9

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*,
    727 F.3d 343 (5th Cir. 2013) .................................................................................................4

*Walsh v. California Cinema Invs. LLC*,
    No. 2:23-CV-09608-ODW (AJRX), 2024 WL 3593569 (C.D. Cal. July 29, 2024) ...............8

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016)................................................................................................22

**Statutes**

18 U.S.C. § 2710, *et. seq.*....................................................................................... *passim*

42 U.S.C. § 1320d–2, *et. seq.*........................................................................................14

**Constitutional Provisions**

U.S. Const. Amend. I ........................................................................................ *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................4, 18

S. Rep. 599 (1988) .................................................................................................5, 13

## I.    INTRODUCTION

This case is about Defendant Rural Media Group, Inc.'s ("Defendant") systematic and routine violation of consumers' privacy rights as established by the Video Privacy Protection Act, 18 U.S. Code § 2710 ("VPPA").  Over the past two years, Defendant has regularly disclosed its consumers' "personally identifiable information" to Meta Platforms, Inc., formerly known as Facebook, Inc. ("Meta"), Alphabet, Inc., formerly known as Google LLC ("Google"), and Yahoo! Inc. ("Yahoo").  *See* 18 U.S.C. § 2710(b)(1); ECF No. 1 at 1.  This personally identifiable information includes the identities of the consumers and URLs identifying the videos that the consumers "requested or obtained" from Defendant.  *See* 18 U.S.C. § 2710(a)(3).  The allegations presented in the Class Action Complaint (the "Complaint") state a claim under the VPPA and Defendant's Motion to Dismiss (the "Motion") should be denied.

## II.    LEGAL AND FACTUAL BACKGROUND

Plaintiffs bring this cause of action to remedy Defendant's violations of consumers' privacy rights as established by the VPPA.

### A.    The Video Privacy Protection Act

The United States Congress passed the VPPA in 1988.  President Ronald Reagan signed the legislation into law that same year.  The law is designed to protect the privacy interests of consumers who request or obtain video materials from commercial providers of such services.  It was enacted in response to a newspaper's publication of then-Supreme Court-nominee Robert Bork's video rental history.  *See generally In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016).

The VPPA defines a "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  It defines "personally

identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(1). It defines a "video tape service provider," in relevant part, as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ."  18 U.S.C. § 2710(a)(4).

The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]."  18 U.S.C. § 2710(b).  Several exceptions to violations of the law are also enumerated, permitting (1) disclosure to the consumer; (2) disclosure the consumer has authorized via "informed, written consent" provided "in a form distinct and separate from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely of the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary course of business of the video tape service provider"; and (6) disclosure pursuant to a court order in a civil proceeding.  *Id*. § 2710(b)(2).  None of the exceptions are relied upon as basis for dismissal by Defendant's briefing currently before this Court.  *See* ECF No. 29.

Sub-section (c) of the VPPA states that consumers may enforce the substantive privacy right through civil litigation.  18 U.S.C. § 2710(c)(1).  The remedies available to consumers include statutory damages of $2,500 per violation, punitive damages, attorneys' fees and litigation costs, and equitable relief.  18 U.S.C. § 2710(2)(A)-(D).

### B. Factual Background

Plaintiffs' Complaint alleges that Defendant is a "video tape service provider." ECF No. 1, ¶ 128. It details how Defendant operates the website www.cowboychannelplus.com (the "Website") where it is "engaged in the business of selling and delivering prerecorded video materials." *Id.*; *see also id.* at ¶¶ 1, 36, 63-67. The Complaint states that these video materials include "a variety of Western-themed prerecorded video programming." *Id.* at ¶ 36; *see also id.* at ¶¶ 63-67.

The Complaint further alleges that Defendant disclosed Plaintiffs' and its other consumers' "personally identifiable information." *See, e.g.*, ECF No. 1, ¶ 130. It states that Plaintiffs each have Facebook accounts. *Id.* at ¶¶ 9, 18, 27. It explains how each person with a Facebook account is assigned a unique, numerical Facebook ID by Meta. *Id.* at ¶ 77. These Facebook IDs are personally identifying, according to the Complaint, because they are each indexed to an individual's Facebook account, which includes the individual's name and other personally identifying information. *Id.* at ¶¶ 78, 83 (explaining how possessing a Facebook ID "allows anyone to look up the user's unique Meta profile and thus identify the user by name"). When a person with a Facebook account accesses Defendant's Website, the website sends the person's Facebook ID to Meta along with other information about the individual's activity on the page, including the page's URL, which identifies the video on the page. *Id.* at ¶¶ 75-108.

The Complaint alleges that Defendant knowingly installed the Meta Pixel and similar tracking pixels developed by Google and Yahoo! and used them to disclose to the respective developers of those tracking pixel its consumers' identities (specifically, in the case of Meta, their Facebook IDs) and the identities of the videos those consumers requested or obtained. *See, e.g.*,

3

ECF No. 1 at ¶¶ 75-119.  It further alleges that none of the VPPA's exceptions apply to Defendant's

conduct.  *Id.* at ¶ 41.

### III.    LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court

must "accept all well pleaded facts as true, viewing them in the light most favorable to the

plaintiff."  *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 346 (5th Cir.

2013) (internal quotations and citations omitted).  A court may not look beyond the pleadings when

deciding a Rule 12(b)(6) motion.  *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive dismissal, a plaintiff's complaint must plead "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  A "plausible claim" under the VPPA requires a plaintiff to allege that

(1) the defendant is a "video tape service provider," (2) the defendant disclosed "personally

identifiable information concerning any customer" to "any person," (3) the disclosure was made

knowingly, and (4) the disclosure was not authorized by the statutory exceptions.  *Mollett v.

Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015).

### IV.    ARGUMENT

Plaintiffs have stated a claim for a violation of the VPPA by pleading facts which plausibly

establish each element of an offense.  Defendant argues that the VPPA is unconstitutional because

it violates the First Amendment.  *See* ECF No. 29 at 3-7.  Alternatively, Defendant argues that the

Complaint fails to state a claim because it does not allege "actual damages" and because it does

not allege that Defendant "knowingly" disclosed their personally identifiable information.  *See id.*

at 8-15.  These arguments run contrary to well-established case law and the plain-stated allegations of the Complaint itself.  Defendant's Motion should be swiftly denied.

### A.  The VPPA Does Not Violate the First Amendment

No court has ever held that the VPPA violates the First Amendment to the Constitution of the United States.  That is because the VPPA regulates commercial speech, furthers privacy interests which have long been recognized as important in American jurisprudence, and does so through means substantially related to those interests.  In fact, the VPPA *protects* First Amendment interests, as Congress expressly recognized when adopting the legislation.  *See, e.g.*, S. Rep. 599 at 4 (1988) ("Protecting an individual's choice of books and films is a second pillar of intellectual freedom under the first amendment.").

### i.  Courts Have Universally Rejected First Amendment Challenges to the VPPA

Since the VPPA was enacted over two and half decades ago, no court has found that it violates the First Amendment despite numerous challenges to that effect.

Federal district courts are in accord that the VPPA does not violate the First Amendment. In *Saunders v. Hearst Television, Inc.*, for example, the court expressly rejected a First Amendment challenge to the VPPA.  711 F. Supp. 3d 24, 33 (D. Mass. 2024).  The court found that the complaint's alleged disclosures of personally identifiable information constituted commercial speech and was therefore subject to intermediate scrutiny.  *Id*.  Drawing on legislative history, the court wrote that "Congress's interest in enacting the VPPA was to 'preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'"  *Id*. (quoting S. Rep. 100-599 at 1).  It determined that these privacy interests are important within the intermediate scrutiny framework given that the "Supreme Court has repeatedly recognized the sanctity of personal privacy."  *Id*. (citing *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995);

*Frisby v. Schultz*, 487 U.S. 474, 483-485 (1988)).  Next, the court found that the VPPA's restriction on the "precise videos that plaintiffs viewed alongside plaintiffs' PII directly and materially advances that interest."  *Id*.  Completing the analysis, the Court held that the "VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers" and that the "'fit' between Congress's goal of protecting privacy in this realm and its means to do so is at least reasonable."  *Id*. (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989)).  For these reasons, the court found the VPPA constitutional.  *Id*.

Similarly, in *Stark v. Patreon, Inc.* the court rejected the defendant's First Amendment argument.  656 F. Supp. 3d 1018, 1039 (N.D. Cal. 2023).  It found that the disclosures alleged by the plaintiffs concerning disclosures to Meta via the Meta Pixel constituted commercial speech.  *See id*. at 1033-34 ("There is no indication that either party to this transfer of information had any non-economic motivation. . . . this Court is satisfied that Patreon's alleged speech at issue is commercial—as is most similar speech governed by the VPPA in the context of corporate data collection and analysis.").  The Court concluded that "the statute's regulation of commercial disclosures similar to those at issue in this case do not support Patreon's contention that the VPPA violates the First Amendment."  *Id*. at 1031.[1]

Three district court opinions have rejected First Amendment challenges to the Michigan Preservation of Personal Privacy Act (the "MPPPA"), Mich. Compl. Laws § 445.1711, a statute which significantly parallels the VPPA.  In *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst I*"), the

---

[1] The *Stark* court also considered defendant's "facial," as opposed to "as-applied," challenge to the VPPA based upon noncommercial speech by entities other than the defendant, but found the facial challenge premature at the motion to dismiss stage.  *See Stark*, 656 F. Supp. 3d at 1039.  Defendant's Motion makes no mention of potential noncommercial applications of the VPPA, nor gives any indication that Defendant intends to present anything other than a challenge to the statute "as-applied" to the facts alleged in the Complaint.  *See* ECF No. 29 at 4-8.

court held that the MPPPA regulated commercial speech that is "solely related to the economic interests of the speaker and the audience." 192 F. Supp. 3d 427, 445 (S.D.N.Y. 2016) (internal citations and quotations marked omitted). Applying intermediate scrutiny, it found that the MPPPA advanced a "substantial state interest" in personal privacy and rejected both facial and as-applied First Amendment challenges. *Id.* at 447-450. Similarly, in *Boelter v. Advance Magazine Publishers Inc.*, the court found that the MPPPA regulated commercial speech and survived an as-applied First Amendment challenge under intermediate scrutiny. 210 F. Supp. 3d 579, 584 (S.D.N.Y. 2016). Finally, the *Hearst* court reaffirmed its earlier conclusion in an opinion denying the defendant's motion for summary judgement wherein it held that the MPPPA's restrictions satisfied the *Central Hudson* test for commercial speech. *Boelter v. Hearst Commc'ns, Inc.* ("*Hearst II*"), 269 F. Supp. 3d 172, 197–98 (S.D.N.Y. 2017).

Several other authorities have taken the position that the VPPA is constitutional. At least two federal circuit courts have stated that the VPPA does not violate the First Amendment. In *Boehner v. McDermott*, the D.C. Circuit wrote that "The government can also limit disclosures by persons who are not its employees without running afoul of the First Amendment" and cited the VPPA as an example. 484 F.3d 573, 578 n.2 (D.C. Cir. 2007). In *IMDb.com Inc. v. Becerra*, the Ninth Circuit wrote that "many state and federal statutes 'regulate data collection and disclosure' without implicating the First Amendment . . . ." and similarly cited the VPPA as one such statute. 962 F.3d 1111, 1124 (9th Cir. 2020). Finally, the United States has intervened on several occasions to defend the constitutionality of the VPPA against First Amendment challenges. *See*, *e.g.*, *Walsh v. California Cinema Invs. LLC*, No. 2:23-CV-09608-ODW (AJRX), 2024 WL 3593569, at *1 (C.D. Cal. July 29, 2024) (noting intervention of the United States to defend the constitutionality

of the VPPA*); Peterson v. Learfield Commc'ns, LLC*, 705 F. Supp. 3d 937, 945 (D. Neb. 2023)
(same); *Stark*, 656 F. Supp. 3d at 1021 (same).

        ii.  <u>Intermediate Scrutiny Applies Because the VPPA Regulates Commercial</u>
<u>Speech</u>

      Intermediate scrutiny applies to Defendant's First Amendment challenge to the
constitutionality of the VPPA because the restrictions at issue concern commercial speech.

      Restrictions on commercial speech are subject to intermediate scrutiny. *Fla. Bar*, 515 U.S.
at 624. This means that if the commercial speech is not misleading and concerns lawful activity,
it may be regulated if the government: (1) "assert[s] a substantial interest in support of its
regulation"; (2) "demonstrate[s] that the restriction on commercial speech directly and materially
advances that interest"; and (3) the regulation is "narrowly drawn." *Id.* (quoting *Cent. Hudson
Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564-565 (1980). These are
sometimes referred to as the *Central Hudson* factors. *See, e.g.*, *Byrum v. Landreth*, 566 F.3d 442,
450 (5th Cir. 2009). In essence, commercial speech restrictions must demonstrate a "fit between
the legislature's ends and the means chosen to accomplish those ends" that is "not necessarily
perfect, but reasonable." *Fox*, 492 U.S. at 481.

      Content-based restrictions remain subject to intermediate scrutiny when they concern
commercial speech. As the Fifth Circuit has recently reiterated, commercial speech is an exception
to the general rule that content-based regulations receive strict scrutiny. *See R J Reynolds Tobacco
Co. v. Food & Drug Admin.*, 96 F.4th 863, 876 (5th Cir. 2024). In *R J Reynolds*, the Fifth Circuit
wrote "we generally review content-based regulations of speech under strict scrutiny unless they
come within an exception such as the commercial speech exceptions of *Zauderer* or *Central
Hudson*." *Id.* It then noted that "For decades, the Supreme Court has consistently applied *Central
Hudson* and *Zauderer* to cases implicating regulation of commercial speech. We, too, are no

strangers to those frameworks." *Id.* (citing *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 485 (5th Cir. 2022) and *Chamber of Com. v. SEC*, 85 F.4th 760 (5th Cir. 2023)); *accord United States v. Edge Broad. Co.*, 509 U.S. 418, 430 (1993) ("it would be incompatible with the subordinate position of commercial speech in the scale of First Amendment values to apply a more rigid standard to commercial speech . . . .").[2]

The VPPA provisions challenged by Defendant concern restrictions on commercial speech. The Complaint alleges that Defendant disclosed personally identifiable information to Meta "in order to take advantage of the targeted advertising and other informational and analytical services offered by Meta." ECF No. 1, ¶ 97. It further alleges that the Meta Pixel permits companies to "monitor and track the actions taken by visitors to their websites and to report them back to Meta[,]" which in turn "allows companies like Defendant, Meta, and third-party marketing companies to build detailed profiles about websites' customers and serve them with highly targeted advertising." *Id.* at ¶ 82. It alleges that Defendant discloses its customers' personally identifiable information to the developers of the tracking pixels "in exchange for increased revenue." *Id.* at ¶ 57. A standalone section of the Complaint describes the for-profit data aggregation industry. *Id.* at ¶ 58-62. In fact, there is no allegation that Defendant made any prohibited disclosures for any purpose other than improving its advertising efforts and maximizing its revenues.

---

[2] Contrary to Defendant's allusions (see ECF No. 29 at 4), *Sorrell* did not change this change this decades-old framework in the slightest—on the contrary, it applied intermediate scrutiny to the disclosure restrictions at issue. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011) ("To sustain the targeted, content-based burden § 4631(d) imposes on protected expression, the State must show at least that the statute directly advances a substantial governmental interest and that the measure is drawn to achieve that interest.") (citing *Central Hudson*, 447 U.S. at 566). Neither did *Reed v. Town of Gilbert*, Ariz., 576 U.S. 155, 163 (2015) nor *Barr v. Am. Ass'n of Pol. Consultants, Inc.,* 591 U.S. 610, 621 (2020) affect the commercial speech exception, as the Fifth Circuit made clear in *R J Reynolds* (which post-dates each of the decisions relied upon by Defendant). *See* 96 F.4th at 876; *see also Barr* 591 U.S. at 620 ("Our decision is not intended to expand existing First Amendment doctrine. . . .").

Courts have universally held that similar disclosures constitute commercial speech under the First Amendment analysis. In *Saunders*, the court wrote that it could "conceive of no legitimate non-commercial First Amendment interest of Hearst that its exploitation of plaintiffs' PII serves." 711 F. Supp. 3d at 33. In *Stark*, the court held that "Patreon's alleged speech at issue is commercial—as is most similar speech governed by the VPPA in the context of corporate data collection and analysis." 656 F. Supp. 3d at 1034. In *Hearst I*, the court found that "Defendant's speech is commercial in nature" because it "relays an individual's economic decisions, elucidates an individual's economic preferences, [and] facilitates . . . new commercial transactions." 192 F. Supp. 3d at 445 (internal quotation marks and citations omitted) (further observing that "businesses' increasing ability to profit from the collection and sale of data supports the conclusion that disclosing consumer information is—primarily, if not entirely—an economic act."); *see also Boelter*, 210 F. Supp. 3d at 598 (similar); *Hearst II*, 269 F. Supp. 3d at 197 (similar).

Since the VPPA restrictions challenged by Defendant in this case regulate commercial speech, the First Amendment challenge is subject to intermediate scrutiny.

### iii. The VPPA Survives Intermediate Scrutiny

As every court to consider the issue has found, the VPPA's restrictions on disclosures of personally identifiable information survive intermediate scrutiny. That is because the VPPA is narrowly drawn to directly and materially advance a substantial interest in personal privacy. *See Central Hudson*, 447 U.S. at 564-565. First, consumers' right to privacy is a substantial government interest. *See, e.g.*, *Stanley v. Georgia,* 394 U.S. 557, 564–565 (1969) (recognizing the "the right to read or observe what [one] pleases—the right to satisfy [one's] intellectual and emotional needs in the privacy of [one's] own home"); *Trans Union Corp. v. F.T.C.*, 245 F.3d 809, 818 (D.C. Cir. 2001) (expressing "no doubt" that the state's interest in protecting "the consumer's

right to privacy . . . is substantial"). This is the exact interest that Congress intended to protect in adopting the VPPA. *See* S. Rep. 100–599, at *5 (noting Senator Leahy's remarks that "[i]t is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home.").

Second, the VPPA directly and materially advances consumers' privacy interests. Under this element of the intermediate scrutiny analysis, the statute "may not be sustained if it provides only ineffective or remote support for the government's purpose." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 505 (1996). That is not the case here. On the contrary, the VPPA's restrictions directly prohibit the disclosure of consumers' personally identifiable information with respect to the audio-visual materials they request or obtain. *See* 18 U.S.C. § 2710(b); *accord Hearst I*, 192 F. Supp. 3d at 449 (writing that the MPPPA "provides direct and material, not ineffective and remote, support for the state's asserted interest" through its analogous prohibitions). The VPPA's private right of action, statutory damages, and other remedies further provide effective mechanisms to ensure that the privacy interests the law protects are enforced. *See* 18 U.S.C. §§ 2710(c)(1), 2710(2)(A)-(D). *See, Saunders*, 711 F. Supp. 3d at 33 (finding the VPPA "directly and materially advances" personal privacy).

Third, the VPPA is narrowly drawn. This neither requires the law to be "least restrictive means" nor the "single best disposition." *Fla. Bar*, 515 U.S. at 632 (1995). Rather, the statute must only represent a "reasonable" means of accomplishing the government's goal, and its scope must be "in proportion to the interests served." *Fox*, 492 U.S. at 480. Such is the case here, where the law limits the dissemination of only the type of information about which the government is concerned, and narrowly targets those likely to possess that information. *See Hearst I*, 192 F. Supp. 3d at 449. Only disclosures of "personally identifiable information" are prohibited, and that

11

term is narrowly defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Only "video tape service provider[s]" are subject to liability, who are defined as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials. . . ." 18 U.S.C. § 2710(a)(4). Finally, only "consumer[s]" have standing to sue, and they are defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). These limitations indicate that the VPPA is narrowly drawn. *See, e.g.*, *Saunders*, 711 F. Supp. 3d at 33 ("the VPPA is narrowly drawn because it applies only to a narrow group of business entities and specific group of consumers.").

Defendant cites no case finding the VPPA unconstitutional. Instead, it relies upon an analogy to *Sorrell*. *See* ECF No. 29 at 4-6 (citing U.S. 552 at 564). But that analogy is seriously misplaced. In *Sorrell*, the Supreme Court struck down a Vermont law which limited the sale, disclosure, and use for marketing purposes prescriber-identifying information possessed by pharmacies. U.S. 552 at 557. It overturned the law because of a significant disconnect between the interests advanced by the government and the law's means of achieving those interests. *Id*. at 572. In other words, the Vermont law failed the second *Central Hudson* factor—that the restriction on speech must directly and materially advance the relevant interest. *See id*.; *see also Central Hudson*, 447 U.S. at 564-565.

The Southern District of New York has repeatedly turned away analogies between *Sorrell* and the MPPPA (Michigan's VPPA analogue). Regarding *Sorrell*, it wrote "the Supreme Court's decision supports the conclusion that the [M]PPPA is comparatively well-crafted." *Advance Mag. Publishers*, 210 F. Supp. 3d at 601. It noted that the actual goal of Vermont law was "prohibiting

data-based marketing practices by pharmaceutical manufacturers" which "it believed caused doctors to make suboptimal prescribing decisions and led to increased drug costs." *Id*. But "the Court found that Vermont impermissibly sought to achieve these policy objectives 'through the indirect means of restraining certain speech by certain speakers.'" *Id*. (quoting *Sorrell*, U.S. 552 at 577). By contrast, the MPPPA's restrictions directly and materially advance the substantial government interest of protecting consumers' privacy and intellectual freedom. *Id*.; *see also Hearst I*, 192 F. Supp. 3d at 450 (distinguishing the law in *Sorrell* from the MPPPA). Given the deep similarities between the MPPPA and the VPPA (including their overlapping objectives and means of accomplishing them), the exact same analysis applies to the VPPA.[3]

Rather than infringe upon the First Amendment, Congress understood that the VPPA would protect the interests and values that the First Amendment embodies. *See* S. Rep. 100-599, at 4 ("If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his house, what books he may read or what films he may watch.") (quoting *Stanley v. Georgia*, 394 U.S. 557 (1969)); *id*. at 6 ("This bill will give specific meaning to the right of privacy, as it affects individuals in their daily lives.") (Sen. Grassley). Indeed, striking down the VPPA would endanger a wide range of privacy interests protected by similar laws across the United States. *See, e.g.*, Am. Library Ass'n, State Privacy Laws Regarding Library Records, ALA.org, https://www.ala.org/advocacy/privacy/statelaws#:~:text=Forty%2Deight%20states%20and%20the,vary%20from%20state%20to%20state ("Forty-eight states and the District of Columbia have

---

[3] Further, the VPPA is not "underinclusive" because, like the MPPPA, it "only permits disclosure based on narrow exceptions that still provide some measure of privacy protection." *Advance Mag. Publishers*, 210 F. Supp. 3d at 601. The statutory exceptions in the VPPA essentially mirror those in the MPPPA. *Compare id*. (listing the MPPPA exceptions) *with* 18 U.S.C. § 2710(b)(2) (listing the VPPA exceptions). Both the MPPPA and the VPPA's exceptions embody the approach recommended by the Supreme Court in *Sorrell* of "allowing the information's sale or disclosure in only a few narrow and well-justified circumstances." 564 U.S. at 573.

laws protecting the confidentiality of library records . . . ."); Hayley Tsukayama, Electronic Frontier Foundation, "Texas is Enforcing Its State Data Privacy Law.  So Should Other States" (Jan. 22, 2025) (noting "the Texas Attorney General's Office has filed its first lawsuit under Texas Data Privacy and Security Act (TDPSA) to take the Allstate Corporation to task for sharing driver location and other driving data without telling customers."); Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d–2; 45 CFR pts. 160 and 164 (2010) (protecting personal health information).  This Court should find that the VPPA withstands First Amendment scrutiny because it is narrowly tailored to directly and materially advance a substantial interest in personal privacy.

### B.  The Complaint States a Claim for Relief Under the VPPA

Defendant next argues that the Complaint fails to state a claim.  Defendant advances two arguments in support of this position.  First, it argues that the Complaint fails to allege "actual damages."  *See* ECF No. 29 at 8.  Second, it argues that the Complaint fails to allege that Defendant knowingly disclosed personally identifiable information.  *See id*. at 11.  Each of these arguments run headlong into contrary precedent, have been previously rejected by courts across the country, and are contradicted by the allegations in the Complaint.  Plaintiffs have stated a plausible claim for relief and Defendant's Motion should be denied.

#### i.  The Complaint Does Not Fail to State a Claim Due to Failure to Allege Actual Damages

Defendant's argument that the Complaint fails to state a claim because it does not allege actual damages within the meaning of the VPPA is entirely meritless.  Defendant's argument fails for at least five separate reasons.  Defendant's Motion should be denied.

First, actual damages are not an element of a VPPA claim.  A "plausible claim" under the VPPA requires a plaintiff to allege that (1) the defendant is a "video tape service provider," (2) the

defendant disclosed "personally identifiable information concerning any customer" to "any person," (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by the statutory exceptions. *See Mollett*, 795 F.3d at 1066. Those elements are drawn from the statutory text of the section of the VPPA which creates the cause of action, 18 U.S.C. § 2710(b). That section provides: "A video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided [below]." 18 U.S.C. § 2710(b). No part of this section requires an allegation of actual damages.[4] *See id*. For this reason alone, Defendant's argument fails.

Second, several other "remedies" are provided for in the VPPA beyond "actual damages." These include "liquidated damages," "punitive damages," "attorneys fees and other litigation costs," and "equitable relief." 18 U.S.C. § 2710(c)(2). Plaintiffs seek each of those remedies in their Complaint. *See* ECF No. 1 at 35-36. Thus, even if Plaintiffs are required to seek any specific remedy provided for by the VPPA as an element of their claims, they have done so in spades in the Complaint by seeking each of these alternative remedies the statute affords.

Third, recovering liquidated damages does not require a showing of actual damages under the VPPA. The relevant statutory text provides for the recovery of "actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). As the *Saunders* court wrote regarding exact issue, "The problem with [Defendant's] reading of the statute is that the text of the VPPA does not condition recovery on proof of actual damages." 711 F. Supp. 3d

---

[4] Defendant's own recitation of the elements of a VPPA claim does not include an element concerning any relief requested, let alone any element specifically requiring actual damages. *See* ECF No. 29 at 11 ("To state a claim under the VPPA, plaintiffs must allege that defendant (1) is a video tape service provider ("VTSP"); (2) who knowingly disclosed to any person; (3) personally identifiable information ("PII"); (4) concerning any consumer.")

at 32. In *Saunders*, as here, the defendant relied heavily on *Doe v. Chao*, 540 U.S. 614 (2004) and

its construction of the Privacy Act of 1974. *See id*.; ECF No. 29 at 9. But the *Saunders* court

thoroughly dispatched that comparison:

> The Privacy Act provides that if the United States violates a provision of the statute,
> it "shall be liable to the individual in an amount equal to the sum of actual damages
> sustained by the individual as a result of the [violation], but in no case shall a person
> entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4).
> The Court concluded that Doe needed to prove actual damages to prevail on a
> Privacy Act claim. *Chao*, 540 U.S. at 620, 124 S.Ct. 1204. **But in doing so, it
> noted that if Congress wished to allow recovery of liquidated damages for
> violations of the Privacy Act absent actual damages, it could have made the
> statute read "the Government would be liable to the individual for actual
> damages 'but in no case . . . less than the sum of $1,000.'"** *Id*. at 623, 124 S.Ct.
> 1204 (alteration in original). **That is nearly exactly how the VPPA is styled.** *See*
> 18 U.S.C. § 2710(c)(2)(A) ("The court may award actual damages but not less than
> liquidated damages in an amount of $2,500.").

711 F. Supp. 3d at 32 (emphasis added). As explained in *Saunders*, the Supreme Court's decision

in *Chao* supports the notion that liquidated damages are separate from actual damages in the

VPPA. *Id*. That is because the phrasing of the VPPA's provision § 2710(c)(2)(A) nearly exactly

matches the language suggested by the Supreme Court in *Chao* regarding how Congress could

show that the two types of damages are independent of one another. *Id*.

Defendant's reliance on the Eleventh Circuit's opinion in *Fanin v. U.S. Dep't of Veterans

Affs.* fails for the same reason. *See* ECF No. 29 at 9 – 10 (citing 572 F.3d 868, 872 (11th Cir.

2009). Like *Chao*, the court in *Fanin* construed the Privacy Act of 1974. 572 F.3d at 871. Largely

relying on the reasoning of *Chao* and another Eleventh Circuit case construing the Privacy Act,

*Fitzpatrick v. IRS*, 665 F.2d 327, 331 (11th Cir.1982), the court found that recovering "actual

damages" under the Privacy Act required allegations of pecuniary losses. *Id*. at 872.

However, the Eleventh Circuit itself has distinguished the "actual damages" language as it

appears in the Privacy Act from the type of language used in the VPPA. In *Kehoe v. Fid. Fed.*

*Bank & Tr.*, it examined this issue in the context of the Drivers' Privacy Protection Act (the "DPPA"). 421 F.3d 1209, 1212 (11th Cir. 2005). The DPPA's language is almost identical to that appearing in the VPPA. It provides that a "court may award . . . actual damages, but not less than liquidated damages in the amount of $2,500." 18 U.S.C. § 2724(b)(1). Distinguishing the DPPA from the Privacy Act, the court found that "actual damages" and "liquidated damages" were "completely different types of damages." 421 F.3d at 1213. It noted that liquidated damages "serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable" and that the Supreme Court has stated that "the fact that no damages are shown is not fatal" when liquidated damages are in issue. *Id.* (citing *Rex Trailer Co. v. United States*, 350 U.S. 148, 153 (1956)). Like the *Saunders* court, the Eleventh Circuit noted the similarity between the DPPA's statutory provision and the Supreme Court's suggested language for showing two different types of damages in *Chao*. *Id.* at 1214 – 1215. Finally, it rejected an application of the 'rule of the last antecedent' and concluded that "it does not follow that 'but not less than liquidated damages' modifies 'actual damages'" in the DPPA. *Id.* at 1215 – 1216 ("Having considered the plain text of the DPPA's remedial provision, we conclude that a plaintiff need not prove actual damages to recover liquidated damages."). Given the nearly identical provisions in the DPPA and the VPPA, the *Kehoe* court's reasoning is equally applicable here.

Fourth, even if actual damages were required, Plaintiff has suffered actual damages – even without any pecuniary loss. The VPPA forbids the disclosure of "personal identifiable information" concerning a person's purchase of prerecorded video materials without informed consent in the form specified in the statute. By requiring informed consent for the disclosure of such information, the VPPA empowers individuals to decide whether to permit their personally identifying information, revealing their personal video purchasing habits, to be disclosed to third

parties. As Congress explained at the time of the statute's enactment, "our right to privacy protects the choice of movies that we watch with our family in our own homes." 134 Cong. Rec. S5399 (May 10, 1988). Congress thus created a privacy right in a person's video purchase information, reflecting its recognition of the sensitive and personal nature of such information. And unlike the Privacy Act, which provides for the recovery of "<u>an amount equal to the sum of actual damages sustained by the individual</u> as a result of the [violation], but in no case shall a person entitled to recovery receive less than the sum of $1,000," 5 U.S.C. § 552a(g)(4) (emphasis added), the VPPA provides for the recovery of "actual damages but not less than liquidated damages in an amount of $2,500," 18 U.S.C. § 2710(c)(2)(A) – without requiring that the "actual damages" suffered be quantifiable in a pecuniary "sum."

Thus, even if actual damages were a prerequisite to recovering the statutorily set sum of liquidated damages (and they are not), Defendant's flagrant violation of the VPPA privacy rights of Plaintiff constitutes an actual injury to Plaintiff that would be compensable with actual damages. Monetary damages, after all, are hardly confined to the compensation of pecuniary loss. Myriad non-pecuniary injuries are compensated by monetary awards under law: reputational harm, pain and suffering, mental and emotional distress, loss of consortium, and the list goes on and on. Invasion of privacy in the context of video-purchasing habits is just another form of non-pecuniary injury compensable by monetary damages. Congress has simply created a special statute to address a special type of invasion of privacy: the unauthorized commandeering and exploitation of information revealing one's choices in prerecorded video consumption. That is an acute invasion of privacy – an actual injury, compensable in actual monetary damages, no different than any other non-pecuniary yet monetarily compensable injury.

Fifth, even if the VPPA required a showing of "actual damages," and "actual damages" required pecuniary loss, Plaintiffs have alleged pecuniary loss. Plaintiffs allege that their personal information has market value. *See* ECF No. 1, ¶¶ 47-57. The Complaint describes the data aggregation and resale industry, which includes the type of personally identifying information allegedly disclosed by Defendant. *Id.* at ¶¶ 58-62. Plaintiffs allege that their data is valuable to Defendant and that its systematic disclosure to Meta allowed Defendant to improve its marketing and increase its revenues. *See, e.g.*, *id.* at ¶¶ 57, 97. Plaintiffs allege pecuniary harms.

Defendant does not cite a single case endorsing its position that actual damages are required to recover liquidated damages under the VPPA. Defendant's Motion should be denied.

    ii. <u>The Complaint Alleges that Defendant Knowingly Disclosed Plaintiffs' Personally Identifiable Information</u>

Defendant's second argument under Rule 12(b)(6) likewise contradicts the both the allegations in the Complaint and the overwhelming weight of case law. Defendant attacks two elements of a VPPA claim. First, it asserts that Plaintiffs have not alleged that the information disclosed by Defendant links them to their video-watching behavior, as required by the statutory term "personally identifiable information." *See* ECF No. 29 at 11. Second, it asserts that Defendant did not "knowingly" disclose their information. *See id.* at 15. Both arguments are routinely turned away by courts considering analogous allegations, including in this district, and Defendant's Motion should be denied.

    a. *Plaintiffs Allege Disclosure of "Personally Identifiable Information"*

Plaintiffs have plausibly and adequately alleged that Defendant disclosed their "personally identifiable information" in violation of the VPPA. Courts across the country routinely find that analogous allegations meet the pleading standard. Defendant's motion should be denied.

Defendant's argument runs contrary to the law and the allegations in the Complaint. The VPPA defines "personally identifiable information" as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). In this case, the Complaint alleges that Defendant disclosed to Meta the Facebook IDs of visitors to its website, and that its disclosure of those Facebook IDs was paired with the URLs of the webpages where consumers watched or purchased prerecorded videos from Defendant. *See, e.g.*, ECF No. 1, ¶¶ 13, 14, 22, 23, 31, 32. As alleged in the Complaint, the URLs identify the videos requested or obtained by consumers. *See, e.g.*, *id.* at ¶¶ 88, 90, 91, 92, 103. Facebook IDs are personally identifying to Meta because they are indexed to an individual's Meta account, which includes the individual's first and last name, birth date, gender, and phone number or email address. *Id.* at ¶ 81. To the wider public, Facebook IDs are personally identifying because anyone in possession of a Facebook ID can use it to identify a person's Facebook account, which displays their name and other identifying information. *See, e.g., id.* at ¶¶ 4, 63.[5]

The Complaint ties those allegations regarding Facebook IDs generally to the Plaintiffs specifically. It alleges that each Plaintiff had an account with Meta, a profile on Meta's internet properties, and a Facebook IDs associated with that profile. *Id.* at ¶¶ 11, 20, 29. Contrary to Defendant contention that "Plaintiffs do not allege that their own public Facebook profiles actually contain PII," *see* ECF No. 29 at 22 n.8, Plaintiffs allege that:

---

[5] The Complaint alleges that Google Analytics and the Yahoo! Dot work similarly. It alleges that when a subscriber watches a video on Defendant's Website, Defendant discloses to Google, through the operation of the Google Analytics, the user's (i) hashed e-mail address, (ii) Google Analytics client ID, and (iii) the video's title, unique numerical identifier, and the URL of the webpage where the video is hosted. ECF No. 1 at ¶ 110. Through the operation of the Yahoo! Dot, the Complaint alleges that Defendant discloses the user's (i) hashed e-mail address and (ii) the title, unique numerical identifier, and URL of the video the user is watching. ECF No. 1 at ¶ 116.

> Each of the Plaintiffs could be publicly identified through the use of their FID at the time they requested or obtained prerecorded video materials from Defendant by linking their FIDs to their Facebook accounts, which display their names, photographs, and other personally identifying information.

ECF No. 1 at ¶ 132.  Plaintiffs further allege that any "ordinary person" could use this information to identify the person to whom the data corresponds.  *See id*. at ¶ 100, 101, 111, 117.

Courts have consistently held that Facebook IDs disclosed to Meta in combination with the URLs or names of videos requested or obtained by consumers constitute "personally identifiable information" under the VPPA.  *See, e.g., Harris v. Pub. Broad. Serv.*, 662 F.Supp.3d 1327, 1334 (N.D. Ga. 2023) (holding that the "bundling of the [Facebook ID] from the c_user cookie with the URLs of the videos Plaintiff watched" satisfies the disclosure element); *Belozerov v. Gannett Co.*, 646 F.Supp.3d 310, 314 (D. Mass. 2022) (finding a Facebook ID meets the definition of personally identifiable information) (collecting cases); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1342 (N.D. Ga. 2022) ("[Plaintiff] adequately alleged that [defendant] disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII.").  In fact, several decisions cited by Defendant support the argument that such allegations state a disclosure of personally identifiable information.  For example, Defendant cites *Robinson v. Disney Online* in the opening section of its argument on this element.  *See* ECF No. 29 at 17 (citing 152 F. Supp. 3d 176, 183 (S.D.N.Y. 2015)).  In holding that the "anonymized Roku serial number at issue" did not "identify a specific person" the Court in *Robinson* recognized that an individual's Facebook ID was personally identifiable:

> Nor is the information disclosed by Disney equivalent to a Facebook ID. A Facebook user—even one using a nickname—generally is an identified person on a social network platform. A Facebook ID . . . is thus equivalent to a name—it stands in for a specific person, unlike a device identifier.

*Robinson*, 152 F. Supp. at 183. (internal quotations and citations omitted); *see also Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 CIV. 6348 (AKH), 2022 WL 17069810, at *3 (S.D.N.Y. Nov. 17, 2022) (noting Robinson's distinction between Facebook IDs and anonymized Roku serial numbers and denying a VPPA defendant's motion to dismiss).

The Southern District of New York recently summarized the jurisprudential landscape on this subject, writing that "Courts have *uniformly* held Facebook IDs to constitute PII under the VPPA, particularly where—as here—the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023) (emphasis added) (collecting cases). Courts in this Circuit are no exception. In *Frawley v. Nexstar Media Grp. Inc.*, for example, Magistrate Judge Horan wrote:

> While there is not a uniform definition of what qualifies as personally identifiable information, "the majority of the courts to address this issue" have found PII to mean "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior."

No. 3:23-CV-2197-L, 2024 WL 3798073, at *8 (N.D. Tex. July 22, 2024), *report and recommendation adopted*, No. 3:23-CV-2197-L, 2024 WL 3807700 (N.D. Tex. Aug. 13, 2024); *Cf. Yershov v. Gannett Satellite Info. Network, Inc*., 820 F.3d 482 (1st Cir. 2016) (rejecting the 'ordinary person' standard for personally identifiable information). The court then recommended that "providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA." *Id.* (internal quotation marks and citation omitted). Judge Lindsay adopted Magistrate Judge Horan's recommendation that Facebook IDs constitute PII under the VPPA. *See id.*; *see also Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023) ("many courts have found that FIDs constitute PII under the statute. At the very least, Meta can easily 'link' the FID to a specific user.") (denying a motion to dismiss).

Defendant relies on inapposite decisions where complaints were dismissed for failures to allege that the plaintiffs' Facebook accounts contained their names. *See* ECF No. 29, 15 n.8 (citing *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 ("Plaintiffs fail to allege their PII was disclosed because they do not identify what information on their Facebook pages, if any, was viewable and could be used to identify them."); *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("[P]laintiffs' allegations are inadequate because they do not allege their Facebook pages contain any personal information, such as their names or email addresses"); *Solomon v. Flipps Media, Inc.*, No. 22CV5508JMAJMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) (similar); *see also id.* at 14 (citing *Edwards v. Learfield Commc'ns, LLC*, 697 F. Supp. 3d 1297, 1307 (N.D. Fla. 2023) (granting a motion to dismiss where the complaint "contain[ed] no allegation as to what information was actually included on [their] [Facebook] profile[s], such as their names or birthdays.").  Despite Defendant's heavy reliance on *In re Nickelodeon Consumer Privacy Litigation*, that case did not concern Facebook IDs nor other tracking pixels.  *See* ECF No. 29 at 11 – 14 (citing 827 F.3d 262 (3d Cir. 2016)).  Like *Robinson*, *Nickelodeon* indicates that Facebook IDs *are* personally identifying.  The court: "We note, however, that even a numeric identifier might qualify as personally identifiable information, at least in certain circumstances."  827 F.3d at 289 n.174.  It then proceeded to discuss *In re Hulu Privacy Litigation* and its holding that Facebook IDs are personally identifying, using that as an example of a circumstance where numeric identifiers would meet the definition.  *Id.* (citing No. C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)).  Similarly, in *Eichenberger v. ESPN, Inc.*, the Ninth Circuit wrote that "A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual."  876 F.3d 979, 985 (9th Cir. 2017).

Courts across the country routinely find that the types of allegations present in the Complaint are sufficient to plausibly allege disclosure of personally identifying information. *See, e.g.*, *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1020–21 (D. Minn. 2023) (finding that a plaintiff plausibly alleged his personally identifiable information was disclosed because his Facebook profile contained his name, "making it feasible to identify [him] by reference to this information."). Plaintiffs have alleged disclosure of their Facebook IDs, that their Facebook profiles contain their names and photographs, and that Defendant's disclosures to Meta included information identifying the videos they requested or obtained. That constitutes personally identifying information within the meaning of the VPPA. Defendant's Motion should be denied.

        b. *Plaintiffs Allege Knowing Disclosures*

Defendant next argues that it did not "knowingly" disclose its consumers' personally identifiable information. *See* ECF No. 29 at 15 -16. Defendant's argument is contradicted by the allegations of the Complaint and the weight of authority. Defendant's Motion should be denied.

For example, in *Czarnionka*, the defendant argued that the plaintiff had not plausibly alleged that "Epoch even knew the Facebook ID existed much less that Epoch considered the Facebook ID to be PII or knew it was transmitted[.]" 2022 WL 17069810 at *3. The court soundly rejected this argument based on the complaint's allegations that the defendant programmed the Meta Pixel into its website code and knew that it would transmit video titles and Facebook IDs to Meta. *Id*. Other courts considering the issue have consistently reached the same conclusion. *See, e.g., Lebakken*, 640 F. Supp. 3d at 1342-43 (denying motion to dismiss); *Frawley*, 2024 WL 3798073 at *9 (same); *Li,* 2023 WL 7280519, at *4 (same); *Feldman*, 659 F. Supp. 3d at 1021-1022 (same); *Harris*, 662 F. Supp. 3d at 1336 (same); *Belozerov*, 646 F. Supp. 3d at 315 (same); *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43 (D. Mass. 2023) (same), *appeal dismissed*

*sub nom. Adams v. Am.'s Test Kitchen, Inc.*, No. 23-1592, 2024 WL 3515257 (1st Cir. July 17, 2024).

Defendant's reliance on *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 595 (9th Cir. 2020), is entirely unavailing. That case did not involve claims under the VPPA. *See generally id*. Nor did it involve allegations concerning the Meta Pixel (nor its predecessor, the Facebook Pixel). *Id.* It is neither factually nor legally apposite, unlike the many cases considering the knowledge element of VPPA claims in the context of pixel-based disclosures. *See, e.g.*, *Frawley*, 2024 WL 3798073 at *9.

The Complaint sufficiently alleges that Defendant knowingly disclosed its consumers' Facebook IDs and URLs identifying and containing the names of the videos the consumers requested or obtained to Meta. Plaintiffs allege that Defendant installed the Meta Pixel on its website knowing that it would transmit the personally identifiable information to Meta. For example, the Complaint states:

> Defendant knowingly disclosed Plaintiffs' and Class members' Private Viewing Information to Meta via the Meta Pixel technology because Defendant intentionally installed and programmed the Meta Pixel code on its Website, knowing that such code would transmit to Meta the titles of the video materials purchased by its customers coupled with its customers' unique identifiers (including [Facebook IDs]).

ECF No. 1, ¶ 131; *see also id*. at ¶¶ 1, 3, 79, 86, 94, 97, 100, 101, 108. These allegations are more than enough to plausibly allege that Defendant knowingly disclosed Plaintiffs' personally identifiable information to Meta within the meaning of the VPPA. Defendants' Motion should be denied.

## V.     CONCLUSION

For the forgoing reasons, Defendant's Motion should be denied. In the event that the Court grants the Motion, Plaintiffs request leave to amend.

Date: February 11, 2025

Respectfully submitted,

/s/ *Tyler K. Somes*

Tyler K. Somes
HEDIN LLP
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3332
Facsimile: (305) 200-8801
tsomes@hedinllp.com

Patrick M. W. Arnold
WALLS LANDRY BAKER & OLIVER, PLLC
5910 North Central Expressway, Ste 1560
Dallas, Texas 75206
Telephone: (214) 265-1231
Facsimile: (972) 280-7634

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of such filing to all parties of record.

/s/ *Tyler K. Somes*