**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

ELLYSE WISSEL; MICHELLE ANDERSON; AND MCLAIN MOTT, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

RURAL MEDIA GROUP, INC.,

Defendant.

Case No. 4:24-CV-999

Hon. Mark Pittman

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................ 1

ARGUMENT ........................................................................ 1

I. The VPPA Violates The First Amendment. ........................................ 1

A. Strict Scrutiny Applies ........................................ 1

B. The VPPA Fails under Strict Scrutiny ........................................ 2

C. The VPPA also Fails under Intermediate Scrutiny ........................................ 3

D. Plaintiffs' Additional Authority is Not Persuasive ........................................ 4

II. Alternatively, The Complaint Fails To Sufficiently Allege A VPPA Claim. ............ 5

A. Plaintiffs Fail to Allege Actual Damages. ........................................ 6

B. Plaintiffs Fail To Allege Defendant Knowingly Disclosed Plaintiffs' PII. ........................................ 7

1. Any Information Was Shared By Plaintiffs' Own Browsers, Not Defendant. ........................................ 7

2. The Information Allegedly Shared Does Not Constitute PII. .......... 7

3. Any Alleged Disclosure Was Not Made "Knowingly." .................. 9

CONCLUSION ........................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Cahill*,
598 F.3d 79 (2d Cir. 2010)....................3

*Aschcroft v. ACLU*,
542 U.S. 656 (2004)....................2

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
591 U.S. 610 (2020)....................1, 2

*Bartnicki v. Vopper*,
534 U.S. 514 (2001)....................3

*Boelter v. Advance Magazine Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016)....................4

*Boelter v. Hearst Communications, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016)....................4

*Boelter v. Hearst Communications, Inc.*,
269 F. Supp. 3d 172(S.D.N.Y. 2017)....................4

*Brown v. Entm't Merchants Ass'n*,
564 U.S. 786 (2011)....................4

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994)....................3

*Comcast of Maine/New Hampshire, Inc. v. Mills*,
988 F.3d 607 (1st Cir. 2021)....................2

*Doe v. Chao*,
540 U.S. 614 (2004)....................6

*Edenfield v. Fane*,
507 U.S. 761 (1993)....................3

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................9

*El Dia, Inc. v. Puerto Rico Dep't of Consumer Affs.*,
413 F.3d 110 (1st Cir. 2005)....................3

*Ellis v. Cartoon Network, Inc.*
803 F.3d 1251 (11th Cir. 2015) ....................................................................................8

*Fanin v. U.S. Department of Veterans Affairs*,
572 F.3d 868 (11th Cir. 2009) ......................................................................................6

*Florida Bar v. Went For It, Inc.*,
515 U.S. 618 (1995)...................................................................................................3, 4

*In re Google, Inc. Privacy Policy Litigation*,
2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ...............................................................7

*Hartranft v. Encore Cap. Grp., Inc.*,
543 F. Supp. 3d 893 (S.D. Cal. 2021)...........................................................................7

*New Georgia Project v. Raffensperger*,
976 F.3d 1278 (11th Cir. 2020) ....................................................................................4

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)......................................................................................8, 9

*Pac. Frontier v. Pleasant Grove City*,
414 F.3d 1221 (10th Cir. 2005) ....................................................................................3

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015).........................................1, 2

*RJ Reynolds Tobacco Company v. Food & Drug Admin.*,
96 F.4th 863 (5th Cir. 2024) .........................................................................................2

*Rubin v. Coors Brewing Co.*,
514 U.S. 476 (1995).......................................................................................................3

*Saunders v. Hearst Television, Inc.*,
711 F. Supp. 3d 24 (D. Mass. 2024) .............................................................................4

*Sorrell v. IMS Health*,
564 U.S. 552, 567-69 (2011) .........................................................................................2

*Stark v. Patreon, Inc.*,
656 F. Supp. 3d 1018 (N.D. Cal. 2023) ....................................................................2, 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).......................................................................................................7

*U.S. West, Inc. v. F.C.C.*,
182 F.3d 1224 (10th Cir. 1999) ....................................................................................3

*UMB Bank, N.A. v. MacMillin Co., LLC*,
654 B.R. 824 (D.N.H. 2023) ....................4

*Wollschlaeger v. Governor, Fla.*,
848 F.3d 1293 (11th Cir. 2017) ....................1

**Statutes**

5 U.S.C. § 552a(g)(4)(A) ....................6

18 U.S.C. § 2710(a)(1) ....................5

18 U.S.C. § 2710(a)(4) ....................3, 5

18 U.S.C. § 2710(b)(2)(B) ....................5

18 U.S.C. § 2710(c)(2)(A) ....................6

Mich. Comp. Laws. 445.1711(a) ....................4

Mich. Comp. Laws 445.1712(1) ....................5

Mich. Comp. Laws 445.1713(a) ....................5

## INTRODUCTION

Defendant Rural Media Group ("RMG" or "Defendant") submits this Reply in further support of its Motion to Dismiss Plaintiffs' Complaint. Plaintiffs' opposition fails to overcome legal deficiencies detailed in the Motion to Dismiss. Plaintiffs' allegations do not establish a violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq.,* and the statute itself is an unconstitutional restraint on speech in violation of the First Amendment. Accordingly, the Complaint should be dismissed with prejudice.

## ARGUMENT

### I. THE VPPA VIOLATES THE FIRST AMENDMENT.

Plaintiffs fail to rebut Defendant's argument that the VPPA imposes an unconstitutional restriction on speech. In response, Plaintiffs do not deny that First Amendment scrutiny applies—they merely argue for a lower level of scrutiny. (*See* Opp. at 8.) Still, Plaintiffs' contention about the requisite standard is unpersuasive. Plaintiffs invite the Court to apply intermediate (not strict) scrutiny, but fail to meaningfully grapple with the fact that the VPPA imposes content- and speaker-based-restrictions, subjecting the VPPA to strict scrutiny. Plaintiffs contend that the commercial speech exception applies, but these arguments are unavailing. In any event, the VPPA does not withstand scrutiny under either standard.

#### A. Strict Scrutiny Applies

The VPPA imposes suspect content- and speaker-based restrictions subjecting the law to strict scrutiny. *Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015); *see also Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1307-08 (11th Cir. 2017). In *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610 (2020), the Court defined a content-based law as one that "'on its face' draws distinctions based on the message a speaker conveys," 591 U.S. at 618 (citation omitted). In other words, one must read the communication's content to know whether it is banned. *See id.* at 618–19. Likewise, the VPPA discriminates based on the message the speaker conveys because it prohibits communications that disclose video choices and not other types of communications. Ultimately, the *Barr* court applied strict scrutiny to strike down

a similar law banning robocalls because that law imposed an impermissible content-based restriction. *Id.* at 621.

Additionally, the VPPA imposes speaker-based restrictions because it applies only to video tape service providers. *See Comcast of Maine/New Hampshire, Inc. v. Mills*, 988 F.3d 607, 615 (1st Cir. 2021) (finding that law that "targets cable operators" is speaker-based). Oddly, Plaintiffs rely on *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018 (N.D. Cal. 2023) (Opp. at 10), but that case found that the VPPA imposes content-based restrictions that are "subject to strict scrutiny." *Stark*, 656 F. Supp. 3d. at 1031 (citation omitted); *see also id.* at 1038 (reiterating that strict scrutiny applies). Similarly, the Court should apply strict scrutiny here.

Plaintiffs attempt to frame the VPPA as a statute that regulates ordinary commercial activity, but the VPPA broadly restricts the dissemination of information. The *RJ Reynolds Tobacco Company v. Food & Drug Admin.*, 96 F. 4th 863, 875-77 (5th Cir. 2024) case that Plaintiffs cite addressed the framework for evaluating whether *compelled* speech violates the First Amendment and is not informative for addressing whether *restrictions* on speech do so. Plaintiffs argue Defendant's speech falls within the commercial speech exception because Defendant allegedly discloses information for increased revenue. (Opp. at 9.) But courts have recognized that even statutes regulating a business' data disclosure can involve non-commercial speech. *See Sorrell v. IMS Health*, 564 U.S. 552, 567–69 (2011) (finding bar on disclosure of personal information regulated speech, not economic activity). Thus, Plaintiff's allegations of Defendant's profit motive carry no significance. *See Barr*, 591 U.S. at 610 (applying strict scrutiny to law regulating profit-motivated robocalls).

**B. The VPPA Fails under Strict Scrutiny**

The VPPA fails each prong of the strict scrutiny analysis. To survive strict scrutiny, the VPPA must be narrowly tailored to serve a compelling governmental interest. *Reed*, 576 U.S. at 171. This means that the speech restrictions imposed by the VPPA must be the least restrictive means of achieving a compelling governmental interest. *See Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004) (striking down a statute that was not the least restrictive means of furthering the

government's interest). While privacy is an important interest, privacy interests alone do not justify content-based restrictions on speech. *See Bartnicki v. Vopper*, 534 U.S. 514, 533-34 (2001). And the VPPA's sweeping prohibition on disclosures of a specific type of information by a specific type of individual are overbroad, covering disclosures that pose no legitimate privacy risk.

**C. The VPPA also Fails under Intermediate Scrutiny**

In any event, the VPPA fails intermediate scrutiny. Plaintiffs' invocation of a broad privacy interest is precisely what does not work. *U.S. West, Inc. v. F.C.C.*, 182 F.3d 1224, 1234-35 (10th Cir. 1999); (Opp. at 10-11). Plaintiffs cite *Florida Bar v. Went For It, Inc.*, 515 U.S. 618 (1995), for the proposition that intermediate scrutiny applies, but that case delineates precisely why the VPPA fails. In *Florida Bar* the court held that "a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real" with "evidence." *Florida Bar*, 515 U.S. at 626; *see also El Dia, Inc. v. Puerto Rico Dep't of Consumer Affs.*, 413 F.3d 110, 115 (1st Cir. 2005) (requiring "evidence, other than conclusory assertions"); *Edenfield v. Fane*, 507 U.S. 761, 771 (1993); *Alexander v. Cahill*, 598 F.3d 79, 92 (2d Cir. 2010); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 n.12 (10th Cir. 2005). As Defendant explained in its opening brief, Congress cited just two incidents in the legislative history as a basis for the VPPA, only one of which involved video-rental disclosure and neither of which resulted in harm. (Mot. at 6.)

Even if the privacy interest were sufficiently substantiated (and it is not), the VPPA is not adequately tailored to protect it. Protection of "prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), is not tailored to an interest in securing consumers' "audio-visual materials" from unwanted public disclosure. (Opp. at 11.) Plaintiffs do not meaningfully address the VPPA's failure to protect privacy in consumers' choices of images, books, or music. This under-inclusivity "diminish[es] the credibility of the government's rationale for restricting speech in the first place." *City of Ladue v. Gilleo*, 512 U.S. 43, 52 (1994). "[T]he overall irrationality of the Government's regulatory scheme" dooms it. *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488 (1995). The VPPA does next to nothing to protect Americans from

disclosures about their First Amendment-protected activities that may expose them to ridicule because most of that protected activity occurs through engagement with pictures, books, magazines, newspapers, texts, blogs, letters, and other materials beyond the VPPA's ambit. The statute impermissibly singles out some content providers for disfavored treatment and relieves similarly situated content providers from the same burdens. *See Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 802 (2011).

### D. Plaintiffs' Additional Authority is Not Persuasive

Plaintiffs point to district court decisions upholding the VPPA, (Opp. at 5-8), but Plaintiffs' reliance on those cases is misplaced. For example, in *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24 (D. Mass. 2024), that court was not presented with an argument about the VPPA's under-inclusivity. *Id*. at 32–33. Even Supreme Court decisions do not stand for propositions they do not decide, *see, e.g.*, *New Georgia Project v. Raffensperger*, 976 F.3d 1278, 1282–83 (11th Cir. 2020), so a district court decision cannot be persuasive on a point it does not address, *cf. UMB Bank, N.A. v. MacMillin Co., LLC*, 654 B.R. 824, 833 n.8 (D.N.H. 2023) (stating familiar rule that district court decisions are not binding). Also, the *Stark* decision Plaintiffs cite deferred a decision regarding applicable scrutiny to await a "factual record," *Stark*, 656 F. Supp. 3d at 1038, but that approach makes little sense where the Court can read the legislative history for itself and where the obligation to justify First Amendment burdens applies to the body that enacted the law at the time it did so, *see Florida Bar*, 515 U.S. at 626–27.

Plaintiffs also cite *Boelter v. Hearst Communications, Inc*., 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ("Hearst I"), *Boelter v. Advance Magazine Publishers Inc*., 210 F. Supp. 3d 579 (S.D.N.Y. 2016), *and Boelter v. Hearst Communications, Inc*., 269 F. Supp. 3d 172(S.D.N.Y. 2017) ("Hearst II"), which address a Michigan statute that is materially different from the VPPA in a number of ways. First, the Michigan statute at issue in *Boelter* and *Hearst* explicitly defines "customer" as "an individual who purchases, rents, or borrows a book, other written material, a sound recording or a video recording." Mich. Comp. Laws. 445.1711(a). In other words, the Michigan statute clearly and explicitly limits its application to individuals who have purchased, rented, or borrowed

a specific type of content. This is different than the VPPA, which more vaguely defines a "consumer" as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Second, the Michigan statute's disclosure restrictions apply to "a person . . . engaged in the business of selling at retail, renting, or lending books or other written materials, sound recordings, or video recordings." Mich. Comp. Laws 445.1712(1). The VPPA, in contrast, applies to "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The VPPA's references to "delivery" and "similar audio visual materials" make the VPPA more vague and overbroad than the Michigan statute. Third, the Michigan statute only requires "written permission of the customer." *See* Mich. Comp. Laws 445.1713(a). This is vastly different from the consent requirements found in the VPPA, which requires consent "that—(i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; (ii) at the election of the consumer—(I) is given at the time the disclosure is sought; or (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B). Plaintiffs' citation to these cases, therefore, only underscores that the VPPA—which involves the same purported government interest as the Michigan statute—is not appropriately tailored to advance that purported interest.

Accordingly, the VPPA violates the First Amendment and Plaintiffs' claims should be dismissed.

## II. ALTERNATIVELY, THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE A VPPA CLAIM.

Even if the VPPA were constitutional (which it is not), Plaintiffs' claims fail because they do not plausibly allege the required statutory elements.

**A. Plaintiffs Fail to Allege Actual Damages.**

The plain text of the VPPA and Supreme Court precedent confirm that actual damages are a prerequisite for relief under the VPPA. Plaintiffs' attempt to sidestep this requirement is both legally and logically flawed.

The VPPA makes clear that a plaintiff must establish actual damages to recover under the statute. The text provides "[t]he court may award actual damages but not less than liquidated damages in an amount of $2,500." 18 U.S.C. § 2710(c)(2)(A). This language does not create two separate and independent avenues for recovery. Rather, it establishes that actual damages must be alleged and proven. The Supreme Court has squarely addressed this issue in a closely analogous context. In *Doe v. Chao*, 540 U.S. 614 (2004), the Court interpreted the Privacy Act of 1974, which—like the VPPA—authorizes recovery of "actual damages" but not less than a specified statutory minimum. The language of the Privacy Act is very similar to the language of the VPPA, providing for "actual damages sustained by the individual…but in no case shall a person entitled to recovery receive less than the sum of $1,000." *Id.* at 619 (quoting 5 U.S.C. § 552a(g)(4)(A)). The Court held that actual damages are a prerequisite to recovering the statutory amount. *Id.* at 627.

The *Doe v. Chao* Court's reasoning applies with full force here, making clear that Plaintiffs cannot bypass the requirement to plead actual damages by simply asserting a right to other types of damages. Indeed, courts applying *Doe v. Chao* have held that a plaintiff must establish actual damages. *See, e.g.*, *Fanin v. U.S. Dep't of Veterans Affairs*, 572 F.3d 868, 872 (11th Cir. 2009) (requiring a showing of pecuniary harm to recover for Privacy Act violation). The non-binding *Saunders* decision that Plaintiffs cite misapplies this precedent and does not address the Supreme Court's emphasis that its interpretation of the damages language in *Doe* turned on the presence of the phrase "actual damages" in the statute, *see Doe*, 540 U.S. at 623 n.8—the phrase that is also present in the VPPA's damages provision.

Plaintiffs attempt to manufacture actual damages (1) by arguing that the very alleged disclosure of their video-watching history constitutes actual damages, and (2) by alleging that their

personal data has "market value" that they have been deprived of due to alleged disclosure. (Opp. at 17-19). Both of these arguments fail.

The Supreme Court has held that a mere statutory violation is insufficient to constitute an actual injury even under the lower Article III threshold. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). And Plaintiffs' market value theory has similarly been rejected. *See In re Google, Inc. Privacy Policy Litigation*, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) (a plaintiff alleging property interest in personal information must "allege how the defendant's use of the information deprived the plaintiff of the information's economic value.")

### B. Plaintiffs Fail To Allege Defendant Knowingly Disclosed Plaintiffs' PII.

#### *1. Any Information Was Shared By Plaintiffs' Own Browsers, Not Defendant.*

Plaintiffs fail to address Defendant's argument that Defendant itself did not disclose Plaintiffs' FIDs or any other personal information, but to the extent any information was transmitted via a pixel, *Plaintiffs' browser(s) made such transmission*. (Mot. at 15-17.) As argued in Defendant's opening brief, these allegations do not allege that *Defendant* transmitted Plaintiffs' PII, but rather that – to the extent any information was transmitted via a pixel – Plaintiffs' *own browsers would have made such transmission*. (*Id.*) Plaintiffs address none of the case law describing how cookies work, which show that Defendant itself does not disclose this data—and therefore, any opposition to this argument is waived. *Hartranft v. Encore Cap. Grp., Inc.*, 543 F. Supp. 3d 893, 913 (S.D. Cal. 2021) ("where a non-moving party fails to address an argument raised by the moving party in the opposition brief, the Court may consider any arguments unaddressed by the non-moving party as waived.").

#### *2. The Information Allegedly Shared Does Not Constitute PII.*

Even if Defendant – rather than Plaintiffs' browser(s) – could be construed to have transmitted information for purposes of considering the motion to dismiss, Plaintiffs do not allege that the information Defendant allegedly disclosed constitutes PII under the VPPA. Defendant relies on *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 285 and *Ellis* to argue that the FID

and other static digital identifiers are not PII because they do not identify a specific person. (Mot. at 10-12). Plaintiffs argue that an FID is PII under the VPPA simply because some other courts have found it to be so. However, the most basic requirement of a VPPA claim is disclosure of "the kind of information that would *readily permit an ordinary person* to identify a specific individual's video-watching behavior." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cir. 2016) (emphasis added). But Plaintiffs admit the FID does not itself identify him—Plaintiffs' Complaint describes a FID as a "sequence of numbers linked to a specific Meta profile," and admits that a person must "type www.facebook.com/[FID] into a web browser" to load an individual's profile and then attempt to identify that person based on whatever information is available on the profile. (Compl. ¶ 77-78). This is not information that would readily permit an ordinary person to identify a specific individual's video-watching behavior and is, therefore, not covered by the VPPA.

Significantly, several courts have found that a "static digital identifier" similar to an FID is not PII. *See Ellis v. Cartoon Network, Inc*. 803 F.3d 1251, 1257 (11th Cir. 2015) (a static digital identifier includes such things as a unique device identifier that is "***randomly generated when a user initially sets up his device and should remain constant for the lifetime of the user's device***.") (emphasis added). A random string of numbers does not permit an ordinary person to identify an individual. Rather, as argued in Defendant's opening brief, static digital identifiers "fall[] even further down the spectrum [of identifiable information]" because "[t]o an average person, an IP address ***or a digital code in a <u>cookie file</u> would likely be of little help in trying to identify an actual person.***" *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 283 (emphasis added). Although Plaintiff argues that an FID is PII because it can be plugged into a Facebook URL and PII might be found on the resulting Facebook profile, this multi-step investigative process does not make the FID shared through the "c_user" cookie, PII. *See id.*

Plaintiffs' opposition also mischaracterizes both Defendant's cited authority and the applicable legal standard under the VPPA. Plaintiffs attempt to distinguish *In re Nickelodeon* and *Eichenberger v. ESPN, Inc.*, 876 F.3d 979 (9th Cir. 2017), but these attempts fail. Contrary to

Plaintiffs' assertions, neither case holds that Facebook IDs constitute PII under the VPPA. As noted in Defendant's opening brief, *In re Nickelodeon* involved the alleged sharing of plaintiff's IP address, browser and operating system settings, and a computing device's unique device identifier. *Id*. at 281-82. The Third Circuit explicitly held that the disclosed IP addresses and digital identifiers were not PII because they did not, on their own, identify an individual. *Id.* at 286. Plaintiffs selectively quote a footnote from *In re Nickelodeon* to suggest that numeric identifiers could qualify as PII "in certain circumstances." *Id*. at 289 n.174. But the court immediately rejected that argument on the facts before it, holding that a disclosed static digital identifier alone does not satisfy the VPPA. *Id.* at 286-89.

And while *Eichenberger* theorized in dicta that a "Facebook *link*" (not an FID) might identify a person, an FID is merely a series of numbers located in a cookie that does not itself identify a person and that does not function as a clickable link that leads directly to a specific person's Facebook profile. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017) (emphasis added). The *Eichenberger* court ultimately affirmed dismissal of the VPPA claim involving a static digital identifier.

There is no basis in the statutory text to hold information which does not itself identify a person can somehow constitute "information which identifies a person" merely because it might theoretically be possible to use that information to launch an investigation attempting to identify a person.

### *3. Any Alleged Disclosure Was Not Made "Knowingly."*

Plaintiffs argue that they have adequately pled that Defendant *knowingly* disclosed PII because "Defendant intentionally installed and programmed the Meta Pixel code on its website." (Opp. at 25). Yet Plaintiffs do not contest Defendant's argument that Defendant has no way to *know* whether Plaintiff—or any users—had FIDs, much less what those FIDs were, whether Plaintiffs set his browser to allow Facebook cookies. (Mot. at 15.) Plaintiffs' Complaint should be dismissed for failure to allege that RMG *knowingly* disclosed any PII

**CONCLUSION**

Defendant Rural Media Group, Inc. respectfully requests that this Court dismiss Plaintiffs' Class Action Complaint with prejudice.

Dated: February 25, 2025

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Ambika B. Singhal*

Ambika B. Singhal
Texas Bar No. 24132954
2850 North Harwood Street, Suite 1100
Dallas, Texas 75201
Tel: 214.210.1200
Fax: 214.210.1201
asinghal@bakerlaw.com

Rachel Palmer Hooper
Texas Bar No. 24039102
811 Main Street, Suite 1100
Houston, Texas 77002
Tel: 713.646.1329
Fax: 713.751.1717
rhooper@bakerlaw.com

*Counsel for Defendant*
*Rural Media Group, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on February 25, 2025, the foregoing document was filed with the Clerk of the Court via the CM/ECF system, which will provide notice of such filing to all parties of record.

*/s/ Ambika B. Singhal*
Ambika B. Singhal