UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ELLYSE WISSEL, ET AL.,**

    Plaintiffs,

v.                                                                  **No. 4:24-cv-00999-P**

**RURAL MEDIA GROUP, INC.,**

    Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Rural Media Group, Inc.'s ("RMG") Motion to Transfer. ECF No. 21. Having reviewed the Motion, relevant docket filings, and applicable law, the Court will deny the Motion.

## BACKGROUND

This case is the second-filed federal class action against Defendant and its related entities alleging violations of the Video Privacy Protection Act ("VPPA"). 18 U.S.C. § 2710. The first, filed on September 25, 2024, in the United States District Court for the Central District of California (the "California action"), was brought by plaintiff Lindsy Saarloos representing a putative class against The Cowboy Channel, LLC ("Cowboy Channel"). The second, this case, was filed on October 18, 2024 (the "Texas action"), by Plaintiffs Ellyse Wissel, Michelle Anderson, and McClain Mott against RMG, the parent company of Cowboy Channel.

Plaintiffs' Complaint in this case alleges that the Parties are bound by a forum selection clause (hereinafter "FSC") designating Tarrant County as the sole jurisdiction where suit could be brought. When Plaintiffs subscribed to Cowboy Channel's streaming video services, Plaintiffs agreed to the Terms of Service. The Terms of Service contained the relevant FSC: "Each party to this Agreement hereby submits to the

exclusive jurisdiction of the state and federal courts sitting in the County of Tarrant in the State of Texas, and waives any jurisdictional, venue or inconvenient forum objections to such courts."[1]

Because the California action was filed before the Texas action, RMG filed this Motion on December 20, 2024, asking the Court to send this case to the Central District of California under the first-to-file rule. The Court will now address that Motion.

## LEGAL STANDARD

Fifth Circuit courts apply a "strong presumption in favor of the enforcement" of mandatory forum selection clauses. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 773 (5th Cir. 2016). To avoid enforcement of a forum selection clause, a party "must demonstrate that [the forum selection clause] is invalid rather than merely claim that the contract is invalid." *Id.* at 774.

On the other hand, courts use the first-to-file doctrine to evaluate cases "that might substantially duplicate those raised by a case *pending* in another court." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999). To determine whether there is substantial overlap, the court may consider whether "the core issue" is the same and whether "much of the proof adduced . . . would likely be identical." *Hart v. Donostia, LLC*, 290 F. Supp. 3d 627, 631 (W.D. Tex. 2018) (quoting *Int'l Fid. Ins. Co. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)).

## ANALYSIS

The Court will first evaluate the FSC in the Terms of Service, including the FSC's: (1) applicability to RMG; (2) enforceability; (3) impact on the first-to-file rule; and (4) effect on the putative class in the California action. The Court will then address whether Plaintiffs are entitled to attorney's fees.

---

[1]ECF No. 32, Ex. A at 9–10.

**A. The FSC**

As a preliminary question, the Court must determine the FSC's applicability to RMG as a non-signatory. Then, the Court will address the FSC's enforceability more generally, as well as the FSC's impact on the first-to-file rule and the California action.

1. Applicability to RMG

The first issue is whether the Terms of Service entered into by Plaintiffs, which contains the FSC, includes RMG as a party to the contract. "Under the general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004).

Based on a plain language reading, the Terms of Service do not include RMG as a party. The agreement, which each Plaintiff agreed to upon subscription, reads in relevant part:

> WELCOME! THE COWBOY CHANNEL [THE 'STATION'] THAT IS PROVIDING THIS SITE (THE 'WEB SITE PROVIDES A VARIETY OF ONLINE SERVICES, FROM FREE NEWS AND WEATHER INFORMATION TO ENTERTAINMENT AND ELECTRONIC COMMERCE ON THE WEB SITE SUBJECT TO YOUR ACCEPTANCE AND COMPIANCE WITH THE TERMS AND CONDITIONS SET FORTH BELOW (THE 'AGREEMENT').[2]

Based on this language, the Cowboy Channel, not RMG, is the only signatory to the Terms of Service.

On the same website, but on a separate page, is the Privacy Policy. In pertinent part, the Privacy Policy states: "The applicable Terms of Service or License Agreement you enter into with RMG [defined as 'Rural Media Group, Inc.'] will govern which RMG company is the controller of your data."[3] By suggesting a subscriber "enter[s] into [the

---

[2]ECF No. 32, Ex. A at 5.
[3]*Id.* Ex. C at 14.

Terms of Service] with RMG," the Privacy Policy, unlike the Terms of Service, references RMG as a signatory. Still, the Privacy Policy is a separate agreement on a separate page, and therefore it does not modify the four corners of the otherwise clear Terms of Service.

Yet, even if RMG is a non-signatory based on a plain interpretation of the Terms of Service, the Fifth Circuit has considered whether non-signatories may still be bound by a forum selection clause. *See Franlink Inc. v. BACE Servs., Inc.*, 50 F.4th 432 (5th Cir. 2022). A non-signatory may be bound if the non-signatory is "'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Id.* at 441. For this analysis, courts may consider factors such as: "(1) common ownership between the signatory and the non-signatory, (2) direct benefits obtained from the contract at issue, (3) knowledge of the agreement generally and (4) awareness of the forum selection clause particularly." *Id.* at 442.

RMG is the parent company of the Cowboy Channel. Therefore, for the first factor, there is common ownership between the signatory, Cowboy Channel, and the non-signatory, RMG.

For the second factor, the Court finds that RMG also receives direct benefits from the contract. The Terms of Service presumably benefit the Cowboy Channel because the Cowboy Channel requires subscribers to agree for access to content.[4] And although the Terms of Service do not mention RMG, the Privacy Policy does. As discussed above, the Privacy Policy cannot bind RMG as a signatory because it is a separate agreement. However, the Privacy Policy can suggest that RMG benefits from such agreement. Again, the Privacy Policy states: "The applicable Terms of Service or License Agreement you enter into with RMG [defined as 'Rural Media Group, Inc.'] will govern which RMG company is the controller of your data." The Privacy Policy references all Terms of Service agreements, whether with the Cowboy Channel or otherwise, as being "enter[ed] into with RMG." This lack of distinction indicates that RMG *is* receiving a direct benefit through its subsidiaries' Terms of

---

[4]*See* ECF No. 32, Ex. A at 5 ("By accessing or using this web site, you agree to be bound by the Terms and Conditions set forth below.").

Service agreements because its own Privacy Policy makes reference to *and clarifies* those agreements.

As for the third and fourth factors, it is apparent that, while RMG may not have been particularly aware of the FSC, it was, at the very least, generally aware. RMG admits that it "may have been generally aware of the Terms of Service."[5] This, of course, is confirmed by the Privacy Policy, which references RMG and the Terms of Service. And while the Court cannot conclude that RMG was more particularly aware of the FSC, it is certainly possible for the same reason stated above.

Returning to *Franlink*, the purpose of the closely-related test is to determine whether it was "foreseeable" for a non-signatory to be bound by a forum selection clause. *Id.* at 441. The Court notes that a parent corporation's relationship with a subsidiary, demonstrating common ownership, may be insufficient on its own to prove foreseeability. The Court further recognizes that non-signatories "should only have contractual provisions enforced against them in 'rare circumstances.'" *Id.* at 445 n.8. Nonetheless, combined with the common ownership factor, the Privacy Policy on the Cowboy Channel's website unmistakably connects the benefits and knowledge of the FSC to RMG, despite RMG's non-signatory status. The Court therefore finds that RMG is bound by the FSC.

### 2. Enforceability

Having found that the FSC applies to RMG as a non-signatory, the Court must next determine whether the FSC is enforceable. While a forum selection clause is presumed enforceable, this presumption "may be overcome . . . by a clear showing that the clause is unreasonable under the circumstances." *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citations and quotations omitted). Unreasonableness may be found where: "(1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purpose be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundament unfairness of the chosen law will

---

[5]ECF No. 34, at 5.

deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Id.* (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

There is no evidence, and RMG does not argue, that the FSC was the product of fraud, that RMG is being deprived its day in court, or that the chosen law will deprive anyone of a remedy. Rather, RMG's sole argument with respect to the enforceability of the FSC is that Texas public policy strongly favors and encourages voluntary settlement. Although RMG is correct that Texas public policy encourages voluntary settlement, Plaintiffs in this case are not required to join the class in the California action. As RMG states in its brief, if and when the Central District of California approves the class settlement, Plaintiffs in this case "will receive notice and have an opportunity to opt out or object."[6] Therefore, rejecting the FSC in this case as violating Texas public policy, in favor of a potential settlement—that Plaintiffs have shown no disposition to join and have the power to opt out of—would be illogical.

Based on these reasons, the Court finds that the FSC is not unreasonable under the circumstances.

### 3. Impact on First-to-File

The Court now turns to the first-to-file doctrine. RMG's Motion is brought exclusively on the basis that the California action was the first filed lawsuit. The first-to-file rule is a "discretionary doctrine of comity and sound judicial administration, under which, when two related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co.*, 174 F.3d at 603. The first-to-file rule may not apply, however, if there are "compelling circumstances." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971). One example of compelling circumstances warranting the non-application of the first-to-file rule is the existence of a valid and enforceable forum selection

---

[6]ECF No. 34, at 2.

clause. *See Cormeum Lab Services, LLC v. Coastal Labs., Inc.*, No. CV 20-2196, 2021 WL 5405219 at *4 (E.D. La. Jan. 15, 2021).

As already addressed, the FSC is both valid and enforceable against RMG. Consequently, there are compelling circumstances warranting this Court's non-application of the first-to-file rule.

### 4. Effect on the California Action

While the Court finds that the FSC is valid and enforceable and therefore declines to transfer this case based on the first-to-file rule, the Court notes that the FSC here has no effect on the plaintiffs in the California action. Parties to a contract are free to waive contractual provisions. And although the Court is not presented with the record in the California action to verify such waiver, nothing in this Opinion should be construed to bind the plaintiffs in the California action to the FSC.

## B. Attorney's Fees

Lastly, Plaintiffs contend that they are entitled to attorney's fees and costs to enforce the FSC. After designating "state and federal courts sitting in the County of Tarrant in the State of Texas" as the exclusive jurisdiction, the FSC says, "[i]n any action to enforce this Agreement, the prevailing party will be entitled to costs and attorneys' fees."[7]

The Fifth Circuit's holding in *Franlink* only addressed whether a non-signatory could be bound by an FSC. 50 F.4th at 432. *Franlink* did not contemplate the recovery of fees, and the Court finds no precedent enforcing such fees against a non-signatory. Thus, the Court declines to grant Plaintiffs' reasonable attorney's fees in enforcing the FSC.

---

[7]ECF No. 32, Ex. A at 5.

## CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** RMG's Motion to Transfer. ECF No. 21.

**SO ORDERED** on this **27th day of February 2025.**


**MARK T. PITTMAN**
UNITED STATES DISTRICT JUDGE