UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ELLYSE WISSEL, ET AL.,

    Plaintiffs,

v.                                                    No. 4:24-cv-00999-P

RURAL MEDIA GROUP, INC.,

    Defendant.

## OPINION & ORDER

On July 2, 2025, ruling on an uncontested appeal, the United States Court of Appeals for the Fifth Circuit vacated this Court's sanctions order nominally fining attorney Tyler Somes $150 for failing to adhere to the principles of litigation conduct that have governed attorneys in this district for the nearly forty years since the decision in *Dondi Properties Corp. v. Commerce Savings & Loan Assoc.*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc). ECF No. 48. The Fifth Circuit then remanded the case to this Court "for further proceedings in accordance with the opinion . . . ." ECF No. 47. While it is unclear what further proceedings are needed given the Parties' settlement (ECF No. 39), the Court's subsequent final judgment (ECF No. 41), and the Fifth Circuit's vacatur of the sanction, the Court takes this opportunity to provide a brief history of *Dondi* and its application to this case. The Court also invites the Parties to submit a report on outstanding issues to be resolved, if any.

### A. *Dondi*

Sitting en banc[1] in 1988, judges from the Northern District of Texas issued the *Dondi* opinion mandating rules of civility in litigation. *Dondi*,

---

[1]"The statutes do not forbid, and some districts on occasion follow, the practice of having all of the judges of the court sit en banc in important matters or of designating a panel of several judges, but fewer than all, to establish uniformity within the district on recurring questions." Charles Alan Wright et

121 F.R.D. at 285 ("We sit en banc to adopt standards of litigation conduct for attorneys appearing in civil actions in the Northern District of Texas.").[2] The judges sitting en banc noted that "valuable judicial and

al., 13 *Fed. Prac. & Proc. Juris.* § 3505 (3d ed.) (citing *Dondi Properties Corp.*, 121 F.R.D. 284).

[2]Over 400 hundred years ago, Sir Francis Bacon admonished trial judges to be on guard to prevent lawyers from engaging in "nimble and sinister tricks and shifts, whereby they pervert the plain and direct courses of courts, and bring justice into oblique lines and labyrinths." Sir Francis Bacon, *Essay "Of Judicature," in* HANDBOOK FOR JUDGES 25, 28 (American Judicature Society ed. 1961).

Likewise, Arch Cantrall famously lectured new judges in 1959:

> The judge sets the standard of practice in his court. He can countenance a low standard of lawyer conduct generally or he can require a high standard of lawyer conduct. Whichever standard prevails in his court will be the standard of practice and conduct of his lawyers outside his court and in their offices.

> Unless the judge requires a high standard of all who practice before him, the best will be forced down to the level of the worst in order to compete on equal terms.

> In all these and other matters, each judge is a leader by virtue of disposition as *the* representative in *his* jurisdiction, of the judicial branch of government.

Arch M. Cantrall, *The Judge as a Leader: the Embodiment of the Ideal of Justice, in* HANDBOOK FOR JUDGES 57, 59 (American Judicature Society ed., 1961) (emphasis in original).

Perhaps because of this duty, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 19 U.S. 204, 227 (1821); *see also Ex parte Robinson*, 86 U.S. 505, 510 (1873). Trial courts have inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962). Moreover, the court, may also exercise its inherent power to "vindicate its own interests" *Ben E. Keith Co. v. Dining All., Inc.*, 80 F.4th 695, 701 (5th Cir. 2023), including maintaining the integrity and ethical standards that govern attorney conduct. *See In re: Deepwater Horizon*, 824 F.3d 571, 578 (5th Cir. 2016).

attorney time" was being "consumed in resolving unnecessary contention and sharp practices between lawyers." *Id.* at 286. Such tactics "threaten[ed] to delay the administration of justice and to place litigation beyond the financial reach of litigants." *Id.* In noting its authority to promulgate such rules, the en banc court stated:

> We are authorized to protect attorneys and litigants from practices that may increase their expenses and burdens (Rules 26(b)(1) and 26(c)) or may cause them annoyance, embarrassment, or oppression (Rule 26(c)), and to impose sanctions upon parties or attorneys who violate the rules and orders of the court (Rules 16(f) and 37) . . . . We are also granted the authority to punish, as contempt of court, the misbehavior of court officers. 18 U.S.C. § 401. In addition to the authority granted us by statute or by rule, we possess the inherent power to regulate the administration of justice.

*Id.* at 287.

Among the rules of civility adopted by the en banc court were the following:

> (C) A lawyer owes, to opposing counsel, a duty of courtesy and cooperation, the observance of which is necessary for the efficient administration of justice and the respect of the public it serves.
>
> . . .
>
> (E) Lawyers should treat each other, the opposing party, the court, and members of the court staff with courtesy and civility and conduct themselves in a professional manner at all times.

*Id.* at 287–88. In discussing extensions of time, the court stated, "[r]easonable extensions of time should be granted to opposing counsel where such extension will not have a material, adverse effect on the rights of the client." *Id.* at 294.

*Dondi* is not an obscure case known only by punctilious district court judges. To the contrary, since 1988, *Dondi* has been cited more than 1,700 times. That total includes numerous citations by district court

judges issuing sanctions against both admitted and non-admitted attorneys for failing to abide by the principles set forth in *Dondi*. *See, e.g., In re Discipline of Ray*, No. 4:19-MC-015-A, 2019 WL 3082523, at *6 (N.D. Tex. July 15, 2019) (McBryde, J.), *aff'd sub nom. In re Ray*, 951 F.3d 650 (5th Cir. 2020) ("The en banc *Dondi* opinion had as one of its goals informing and educating *members of the Bar of this court* that they should not engage in the kinds of inappropriate conduct in which Ray engaged in this case.") (emphasis added; cleaned up); *Butler v. Collins*, No. 3:18-CV-00037-E, 2022 WL 22890825, at *9 (N.D. Tex. Dec. 2, 2022) (Brown, J.) (setting a show cause hearing to sanction a New York attorney appearing *pro hac vice* for violating principles in *Dondi*); *Cristan v. Bayer CropScience*, L.P., No. 5:10-CV-119-C, 2011 WL 13291808, at *4 (N.D. Tex. July 6, 2011) (Cummings, J.) (sanctioning defendant's counsel located in Lubbock, Texas, for *Dondi* violations); *Lelsz v. Kavanagh*, 137 F.R.D. 646, 648 (N.D. Tex. 1991) (Sanders, C.J.) (removing the Assistant Attorney General from the litigation for continuing to violate the principles set forth in *Dondi*).[3]

The numerous citations also include several decisions of the Fifth Circuit affirming the applicability of *Dondi* to ***all attorneys*** practicing in the Northern District of Texas. *See, e.g., In re Elliott*, 15 F.3d 179 (5th Cir. 1994) (remanding to consider the least severe sanction under *Dondi* but affirming the bankruptcy court's authority to issue sanctions under *Dondi*); *In re Ray*, 951 F.3d 650 (5th Cir. 2020) (affirming the district

---

[3]In the decades since its adoption, *Dondi* has also been embraced and utilized by various courts outside the Northern District of Texas. *See, e.g., In re Armstrong*, 487 B.R. 764, 773 (E.D. Tex. 2012) ("The standards of conduct governing conduct in the Eastern District of Texas, set out in Eastern District Local Rule AT–3, are those enumerated in *Dondi Prop. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 286 (N.D. Tex. 1988).")." This includes federal and state courts in other states. *See, e.g., Mississippi Farm Bureau Mut. Ins. Co. v. Parker*, 921 So. 2d 260, 262 (Miss. 2005) ("We quote extensively from *Dondi*."); *Nazar v. Harbor Freight Tools USA Inc.*, No. 2:18-CV-00348-SMJ, 2019 WL 7819658, at *2 (E.D. Wash. Sept. 23, 2019); *Saturn Mgmt. LLC v. GEM-Atreus Advisors, LLC*, 754 F. Supp. 2d 272, 284 n.8 (D. Mass. 2010). Indeed, *Dondi* has even been cited by the Territorial Court of the Virgin Islands. *LPP Mortg. Ltd. v. Quetel*, No. CIV. 4/2003, 2004 WL 3546283, at *6 (Terr. V.I. July 16, 2004).

court's permanent disbarment of an admitted attorney from practicing in the Northern District of Texas based on *Dondi* violations). For example, in *Clapper v. American Realty Investors, Inc.*, a Fifth Circuit panel recently *reversed* a district court judge by finding that a closing argument by one attorney "irreparably prejudiced the fairness of the trial." 95 F.4th 309, 312 (5th Cir. 2024). Pointing to *Dondi* as "one of the first steps to mandate civility" in Texas courts, the *Clapper* court not only "commended Texas's efforts 'to instill a greater sense of professionalism among attorneys'" through *Dondi*, but the court also reiterated the need for such standards today. *Id.* at 318–19 ("We do so again today. We recognize that such unprofessional practices as those that occurred in this case continue to appear in our courtrooms, despite many attempts to eradicate such practices."). Notably, nothing in *Clapper* restricted the application of *Dondi* to attorneys filing *pro hac vice* applications or attorneys "on notice." *Id.* at 318 ("[T]he [*Dondi*] judges adopted a standard by which *attorneys* appearing in civil actions must adhere.") (emphasis added).

In each opinion cited above, the courts made no effort to determine whether an attorney was "on notice" of the rules set forth in *Dondi*. Rather, courts reasonably believed, just as courts do with the Rules of Professional Responsibility, or the Texas Lawyers Creed, that an individual practicing in the Northern District of Texas will abide by the rules of conduct in that forum, which necessarily include *Dondi*. Indeed, the foundational principle *ignorantia juris non excusat*—ignorance of the law is no excuse—undergirds all civil and criminal law in the Western world.

## B. The Sanction

Mr. Somes filed this case on behalf of Plaintiffs on October 18, 2024. ECF No. 1.[4] On November 20, 2024, the Defendant filed a Motion for Extension of Time to File Answer. ECF No. 11. In the Motion for

---

[4]A prior case involving the same claims and parties was filed by Mr. Somes on September 27, 2024. However, after failing to obtain local counsel, as ordered by the Court and required by the Local Rules, that case was dismissed without prejudice. Mr. Somes then re-filed the case.

Extension, Defendant pointed out that Plaintiff refused to send Defendant a waiver of service request despite Defendant's stated willingness to accept such waiver, which would have given Defendant sixty days to respond. *Id.* ¶ 2. Instead, Plaintiffs agreed to grant an eight-day extension. *Id.* ¶ 4. In its later Motion for Extension, Defendant highlighted that an earlier-filed California class action would potentially resolve the claims in this lawsuit, and for that reason, asked for a more generous extension. *Id.* ¶ 5. After Defendant's counsel conferred with Mr. Somes for a 30-day extension, Mr. Somes indicated opposition to any further extension. *Id.* ¶ 8.

Finding the Defendant's Motion for Extension meritorious and necessary considering the complications inherent with the competing California class action, the Court granted Defendant's Motion for Extension. ECF No. 12. The Court also set a hearing for Mr. Somes to show cause why he should not be sanctioned for failing to adhere to the principle in *Dondi*—which also appears substantially the same in the Texas Lawyer's Creed—that "[r]easonable extensions of time should be granted to opposing counsel where such extension will not have a material, adverse effect on the rights of the ***client***." *Dondi*, 284 F.R.D. at 294 (emphasis added). At the hearing, the Court concluded Mr. Somes had presented no material, adverse effect on his client's rights which justified opposing the requested extension. Accordingly, the Court assessed a nominal $150 fine[5] on Mr. Somes and ordered him to review *Dondi*, the local rules, the Texas Lawyers Creed, the Texas Rules of Professional Conduct, and the judge's specific requirements, which it found to be the least severe sanction to ensure future compliance with *Dondi*. ECF No. 15.

---

[5]"When the conduct of a party or an attorney wastes the court's time, the court may impose a fee to compensate the public." *Powell v. Nelnet, Inc.*, No. 4:23-CV-00783-SDJ-BD, 2025 WL 1584694, at *5 (E.D. Tex. June 4, 2025) (citing *Eisenberg v. Univ. of New Mexico*, 936 F.2d 1131, 1136 (10th Cir. 1991)); *Magnus Elecs., Inc. v. Masco Corp. of Indiana*, 871 F.2d 626, 634 (7th Cir. 1989); [*Cf.*] *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1191 (E.D. Tex. 1996) (finding "that placing even the most minimal dollar value on the Court's time, the fine imposed is proper to punish [the sanctioned attorney] for the judicial resources his conduct has caused to be expended").

## C. The Fifth Circuit's Opinion

Given the decades-long history of courts applying *Dondi* in this district as well as the Fifth Circuit, and the minimal sanction assessed in this case, the Court is perplexed by the panel's decision vacating this Court's order—particularly with respect to whether Mr. Somes was "on notice" of the requirements in *Dondi*.

The Fifth Circuit opinion reversed this Court's assessment of a $150 sanction on Mr. Somes for abuse of discretion. Such discretion is abused if a court's ruling is "based on an 'erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *In re Finn*, 78 F.4th 153, 156 (5th Cir. 2023).

Applying this standard, the panel concluded that this Court based its $150 sanction of Mr. Somes on a "clearly erroneous factual finding" that "Somes had notice that he was required to read the Northern District's en banc *Dondi* decision." ECF No. 48 at 7. In support, the panel wrote that the Local Rules do not contain any instruction for attorneys to read or follow *Dondi*, nor do the judge's specific requirements of practice.[6] *Id.* And while the *pro hac vice* applications in the Northern District of Texas require out-of-state attorneys to read *Dondi*, Mr. Somes was not a *pro hac vice* attorney—he was a "fully admitted member to the Northern District's bar." *Id.* According to the panel, this meant Mr. Somes was not "on notice."[7] *Id.*

---

[6]Notably, the local civil rules of the Northern District of Texas do not expressly require that attorneys read and comply with the standards set forth in the Texas Disciplinary Rules of Professional Conduct, but the Fifth Circuit has long held that "[a] federal court may hold attorneys accountable to the state code of professional conduct." *In re: Deepwater Horizon*, 824 F.3d 571, 577 (5th Cir. 2016); *see Resol. Tr. Corp. v. Bright*, 6 F.3d 336, 341 (5th Cir. 1993) ("The Texas Disciplinary Rules of Professional Conduct do not expressly apply to sanctions in federal courts, but a federal court may nevertheless hold attorneys accountable to the state code of professional conduct."). The undersigned struggles to grasp why *Dondi*, an en banc opinion of this District, which explicitly governs attorney conduct in the Northern District of Texas is any different.

[7]As an additional matter, the Court notes that Mr. Somes did not represent to this Court that he was not "on notice" of the standards in *Dondi*. Indeed, in his declaration to show cause, Mr. Somes wrote, "**I have read *Dondi***

7

But as the Court's history of *Dondi* at both lower and appellate court levels indicates, "notice" of *Dondi* has never been considered in assessing sanctions against an admitted attorney. ***All*** attorneys practicing in the Northern District of Texas are required to abide by the principles set forth in *Dondi*. The *Dondi* opinion itself does not make a distinction between those appearing *pro hac vice* and those admitted to the Northern District's bar. *Dondi*, 121 F.R.D. at 285 ("We sit en banc to adopt standards of litigation conduct for *attorneys appearing* in civil actions in the Northern District of Texas."). Indeed, such a distinction would be nonsensical—why would the Northern District of Texas hold out-of-state attorneys to a higher standard than frequent practitioners? If anything, the exact opposite is expected: those who are members of the bar in this district understand better than anyone that they must "adhere to the higher standard of conduct" adopted by the en banc court 37 years ago. *Id.* at 288. The *pro hac vice* application's *Dondi* requirement is merely a tool to inform out-of-state attorneys of such well-established expectations already governing, and known by, those admitted to practice in the district.

---

***Properties Corp. v. Commerce Savs. & Loan Ass'n*, 121 F.R.D. (N.D. Tex. 1988) (en banc)**." ECF No. 14 ¶ 3 (emphasis added). The Court understands Mr. Somes's statement was made in response to the Court's order to show cause, which cited *Dondi*. Nonetheless, there is nothing in Mr. Somes's declaration arguing that he had no notice. The closest Mr. Somes comes to such an argument is mentioning (in a footnote) that he never filed a *pro hac vice* application. But the assertion that he had no notice was not made until Mr. Somes's appellate brief claimed (again, in a footnote), "[t]here is no evidence in the record that Mr. Somes had prior notice of *Dondi*." Somes App. Brief at 16 n.5. The Fifth Circuit has long held that arguments not made in the lower court—such as Mr. Somes's notice argument—cannot be raised for the first time on appeal. *See, e.g.*, *Webster v. Kijakazi*, 19 F.4th 715, 720 (5th Cir. 2021) ("Arguments not raised before the district court are waived and cannot be raised for the first time on appeal."). This appellate maxim seems even more imperative in one-sided appeals such as this one. After all, "clairvoyance is not a power vested in the judiciary under Article III of the Constitution, and a district court can only act on the information provided by the attorneys practicing before it." *Gipson v. Weatherford Coll.*, No. 4:22-CV-0730-P, 2023 WL 8539847, at *1 (N.D. Tex. Dec. 11, 2023) (Pittman, J.).

Again, *Dondi* made no distinction between *pro hac vice* attorneys and those admitted to practice. Neither should the appellate court. As is true of all laws, *Dondi* binds those in its purview whether they have read it or not—and whether they like it or not. The panel's opinion in this case leaves unclear whether it agrees. Therefore, the undersigned has decided to remove all doubt as to the applicability of *Dondi* to proceedings in this Court. The undersigned took the following three actions: *First*, he added a reminder to read *Dondi* and other ethics-related authorities to the automated "New Case" docket entry that issues with every new civil action. *Second*, he added a question to his form meet-and-confer order asking attorneys whether they have read, and agree to abide by, *Dondi*, requiring an affirmative response in the required joint report. *Third* and finally, he amended his judge-specific requirements to add yet another reminder that all attorneys of record must review *Dondi*. The *Dondi* opinion is easily accessible by means of legal databases like Westlaw and Lexis. It is also available to read for free online at https://www.txnd.uscourts.gov/sites/default/files/documents/Dondi.PDF and other locations. The opinion spans about 6,000 words, and the substantive litigation standards barely scratch 300. Requiring attorneys to read it places no undue burden on them.

The Court is further perplexed by the Fifth Circuit's finding that the second extension would pose a "material, adverse effect" on Plaintiffs' rights, seemingly adopting Mr. Somes's *ipse dixit* without any facts to support it. The Court had determined that it did not believe Mr. Somes's testimony to that effect and found, to the contrary, that he acted in his own best interest. It is the province of the trial court to determine the facts. *S.S. Silberblatt, Inc. v. U.S. ex rel. Lambert Corp.*, 353 F.2d 545, 550 (5th Cir. 1965); *Sullivan, Long & Haggerty v. Washington*, 128 F.2d 466, 467 (5th Cir. 1942) ("[A]ppellate courts may reverse if the findings are manifestly erroneous . . . they may not unless they are."). And determining the credibility of witnesses is "peculiarly within the province of the district court." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 580 (5th Cir. 2015) (quoting *Orduna S.A. V. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1154 (5th Cir. 1990)). In addition, the panel apparently

relied on facts that occurred after the show cause hearing to reach its finding.[8]

With deepest respect to the Fifth Circuit, woe to the judicial branch if trial judges are prohibited from exercising their "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson*, 19 U.S. at 227.

### D. Status Report

Notwithstanding this Court's confusion with the Fifth Circuit's order to vacate and remand, the Court invites the Parties to submit a notice to the Court detailing any remaining issues to be addressed. The Court **ORDERS** the Parties to file such notice **on or before August 4, 2025**.

**SO ORDERED** on this **28th day of July 2025.**

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

---

[8]"The district court vindicated Plaintiffs' right to their chosen forum when it denied [Defendant's] motion to transfer the case to California." ECF No. 48 at 8. The Court would point out that the denial of the motion to transfer, which was filed a month after the order for sanctions, reinforces the conclusion that no harm would come to Plaintiffs as a result of the delay in Defendant's answer.